**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RONALD COOKE and JINJER COOKE, husband and wife;<br><br>　　　　Plaintiffs,<br><br>THE STATE OF ARIZONA *ex rel.* TERRY GODDARD, the Attorney General; THE CIVIL RIGHTS DIVISION OF THE ARIZONA DEPARTMENT OF LAW,<br><br>　　　　Plaintiff/Intervenor,<br><br>vs.<br><br>TOWN OF COLORADO CITY, ARIZONA; CITY OF HILDALE, UTAH; HILDALE-COLORADO CITY UTILITIES; TWIN CITY WATER AUTHORITY, a Utah non-profit corporation; TWIN CITY POWER; JOHN and/or JANE DOES I-XX; XYZ ENTITIES/CORPORATIONS I-XX,<br><br>　　　　Defendants. | No. CV-10-8105-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Defendants Hildale-Colorado City Utilities', Twin City Power's, and City of Hildale's Motion to Stay (Doc. 60), filed on March 16, 2011. Plaintiffs Ronald Cooke and Jinjer Cooke filed an Opposition to Defendants' Motion (Doc. 75) on April 4, 2011, as did Plaintiff-Intervenors State of Arizona and The Civil Rights Division of the Arizona Department of Law (Doc. 76). Defendants filed their Reply on April 14, 2011

(Doc. 79). The Court, having considered all parties' briefs, denies Defendants' Motion to Stay.

**I. Background.**

On June 25, 2010, Plaintiffs Ronald Cooke and Jinjer Cooke filed their First Amended Complaint ("FAC") alleging that Defendants violated Plaintiffs' rights pursuant to 42 U.S.C. §§ 1983 and 1985, 42 U.S.C. § 3601, *et seq.*, which is the Federal Fair Housing Act ("FHA"), and A.R.S. § 41-1491.19, which is the Arizona Fair Housing Act ("AFHA"). (Doc. 3). Plaintiffs' FAC states that all Defendant entities are, and have been, "operated and controlled by members of the FLDS religion, . . . which seeks to exclude non-members of FLDS from . . . Colorado City, Arizona, and Hildale, Utah." (*Id.*, ¶ 13). Plaintiffs further allege that Defendants engaged in disability discrimination and religious discrimination against Plaintiffs by delaying their electricity and sewer services for months and by denying them access to running water for over two years. (*Id.*, ¶¶ 14-16, 48, 49, & 51; Doc. 61, ¶¶ 1-2).

The FAC alleges that Plaintiff Ronald Cooke is "permanently and severely disabled as the result of having been hit by a large truck while performing road construction." (Doc. 3, ¶ 11). The FAC further alleges that Ronald Cooke's disabilities necessitate his access to running water and electricity for his care. (*Id.*).

Ronald Cooke was a member of the Fundamentalist Church of Jesus Christ of Latter Day Saints ("FLDS") until age 18 or 19, when he "left the FLDS religion . . . and moved to Phoenix, Arizona[] to work in construction." (*Id.*, ¶ 10). Plaintiff Jinjer Cooke was never a member of the FLDS Church. (*Id.*, ¶ 12).

The United Effort Plan Trust ("UEP") owns the land on which the Cookes live. (Doc. 61, ¶¶ 32-41). Members of the FLDS established the UEP "to hold and manage all real estate and improvements consecrated by FLDS adherents." (*Id.*, ¶ 36) The stated purpose of the UEP is "to provide for Church members, according to their wants and needs, insofar as their wants are just." (*Id.* ¶ 41).

In 2005, "the Utah Attorney General ("Utah AG") brought an action for breach of

1  trust against the UEP Trustees" in the Utah state court. *Id.* ¶ 42). The Utah AG sought to
2  immediately suspend the "authority and power of the current trustees pending a final decision
3  of the Court on their removal," and the appointment of an interim special fiduciary to
4  preserve the assets of the Trust. (*Id.*, ¶ 43) (citation omitted). On May 27, 2005, The Utah
5  state court granted a temporary order that required the removal of the Trust's trustees and the
6  appointment of Bruce Wisan as acting Special Fiduciary. (*Id.* ¶¶ 44-45).

7  On December 13, 2005, the Utah state court determined that the Trust should be
8  reformed in a way that "create[d] a clear division between" its secular and religious portions
9  (*Id.*, ¶ 49-50). In the wake of the Trust's reformation, the court greatly expanded Bruce
10  Wisan's authority as Special Fiduciary. (*Id.*, ¶ 52). His responsibilities included "identifying
11  beneficiaries of the UEP Trust, determining these beneficiaries' 'just wants and needs,' and
12  providing homes to these beneficiaries in a 'religiously neutral way'." (*Id.,* ¶¶ 53-55).
13  Subsequently, the FLDS brought an action against Bruce Wisan and others in the U.S.
14  District Court for the District of Utah, in which the FLDS claimed that the reformation of the
15  UEP violated their First Amendment rights. (*Id.,* ¶ 56). The district court agreed with the
16  FLDS and, on February 25, 2011, that court issued a preliminary injunction based on the its
17  finding that the state court's order to reform the UEP violated the Establishment Clause of
18  the First Amendment. (*Id.*, ¶ 59-60).

19  As a result of this procedural background, the parties dispute whether the Cookes
20  rightfully occupy the property where they currently reside. (*Id.*, ¶¶ 78-87). According to
21  Defendants, in finding the reformed Trust unconstitutional, the Utah district court held that
22  "any and all actions Bruce Wisan has taken following [the] reformation of the UEP Trust on
23  December 13, 2005 are unconstitutional because they violated the first amendment." (*Id.*,
24  14:26-15:1). Defendants claim that Bruce Wisan therefore lacked authority to grant a lease
25  to the Cookes and the lease is null and void. (*Id.*, 15:1-5). Defendants acknowledge that the
26  Utah district court did not determine the property interests of those who entered into lease
27  agreements with the UEP while Bruce Wisan served as Special Fiduciary. (Doc. 74, 4:18-
28  19).

1    Further, according to Defendants, the previous tenant, Robert Black, "believes himself
2    the rightful occupant of the Subject Property" that the UEP assigned to the Cookes. (*Id.*, ¶
3    84). Defendant Colorado City filed a declaratory action in another court requesting that the
4    court determine the rightful occupant of the property in question.[1] (*Id.*, 15:13-17).

## II. Analysis and Conclusion.

In this case, oral argument added some clarity that the written briefs failed to provide. Initially, the amount of ink spilled about the Utah action and volume of attachments from the Utah action, led the Court to believe that Defendants were concerned over the potential conflict of the Utah federal court litigation before Judge Bensen; but that is not the case. Instead, following oral argument, it now appears Defendants' argument hinges on an Arizona case.

It is true that buried in various corners of the briefs are references to "the declaratory action" or even "newly filed UEP case." Indeed in Defendants' Memorandum in Support of Motion to Stay (Doc. 61) there is this sentence: "Such is the case here with the *Complaint for Declaratory Judgment,* Case No. CV2010-020375." This obscure sentence buried among rhetoric about Judge Bensen's case, coupled with references to a declaratory action by counsel during oral argument, prompted the Court to inquire where this declaratory action is pending. For the first time it was made clear that it was filed March 11, 2011 — six days before Defendants filed the Motion to Stay — in Arizona. In fact, that case bears the number CV 1l-8037-PCT-DGC, a clear tipoff that it is a case pending in the District of Arizona. It was further disclosed that CV2010-020375 was an erroneous designation and no tip off whatsoever.

This Court previously granted Defendants' Motion to Stay Current Discovery Requests pending disposition on the instant Motion to Stay. (Doc. 77). The Court having now clarified the parties' positions, the remaining issue is whether to stay this case until the

---

[1] As will be discussed more below, this declaratory action was filed in the district of Arizona and is currently pending before Judge Campbell.

- 4 -

1 resolution of the declaratory action pending before Judge Campbell.

2 The Court has now examined the CV 11-8037-PCT-DGC matter and that examination leaves the Court unpersuaded that a stay is appropriate. First, Judge Campbell's case is much newer than this case. Second, if Defendants theorize it may someday be decided that Black is the rightful owner and therefore Cookes are not, Black is not a party to the declaratory action pending in the CV 11-8037-PCT-DGC matter. Neither are the Cookes, for that matter. Thus, it is not certain that the declaratory action will be binding on either of them. However, this Court need not resolve this issue because one other point of clarity emerged at the time of argument: it appears that counsel do not strenuously dispute the proposition that certain of the Plaintiffs' claims would survive even if it is ultimately determined that the Cookes were not legally entitled to possession.

12 Specifically, Plaintiffs argue that the events that gave rise to this action occurred when the Cookes occupied the property under a legally executed occupancy agreement and, therefore, their right to bring suit is not dependent upon an after-the-fact determination of the property's rightful occupants. (Doc. 70, 3:20-27). Thus, the issue here is whether Plaintiffs may bring suit *regardless* of an after-the-fact determination of their right to occupy the property. If Plaintiffs' are correct, and the determination of rightful occupancy currently pending in another court does not bear on their right to bring their civil rights action, then the Court should deny Defendants' Motion to Stay.

20 To bring an action the Cookes' must have standing. *Allen v. Wright*, 468 U.S. 737, 750-51 (1984). Standing to bring suit requires three elements: (1) that the plaintiff suffered an injury in fact, which is an actual or imminent violation of a particular legally protected interest; (2) a causal connection between the injury and the conduct complained of; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal citations omitted).

27 Here Plaintiffs claim that the Cookes' civil rights were violated because Defendants discriminated against them based on their religion and physical disabilities in violation of

1 the Federal Fair Housing Act, the Arizona Fair Housing Act, and 42 U.S.C. §§ 1983 and 2 1985. Plaintiffs further claim that Defendants' alleged discrimination caused the Cookes to 3 experience two winters and over two years living in a "cramped, cold travel trailer, relying 4 on a propane fuel generator and no sewer service" and to being forced to haul culinary water 5 every other day to care for Mr. Cookes' disabilities. (Doc. 3, ¶¶ 50-54). Plaintiffs claim 6 these hardships resulted in "economic damages, severe emotional distress and loss of 7 enjoyment." (*Id.*). If the Cookes prevail on these claims, they would be entitled to redress 8 for their injuries.

9 The events that gave rise to this action occurred when the Cookes had *at least* a 10 colorable claim to the property on which they still reside. *See Cameron v. U.S.*, 148 U.S. 11 301, 308 (1893), *Wright v. Mattison*, 59 U.S. 50, 56 (1855). Their occupancy agreement was 12 executed when Bruce Wisan was the legal administrator of the UEP and was charged with 13 the authority to assign the Trust's land to its beneficiaries. Until the Utah District Court held 14 that the Trust's reformation violated the First Amendment's Establishment Clause, all parties 15 involved in the instant case had reason to rely on the validity of the Cookes' lease agreement 16 with the UEP. Defendants point out that *"unless or until it is overturned,"* the Utah district 17 court's ruling on the reformed Trust's constitutionality is *"firm and applicable."* (Doc. 74, 18 4:15-16) (emphasis added). Likewise, the Utah state court's ruling that required the 19 reformation of the UEP, and the appointment of Bruce Wisan as Special Fiduciary, was firm 20 and applicable until held unconstitutional in the Utah. district court. Therefore, from May 21 27, 2005, when the Utah state court issued a temporary restraining order and appointed Bruce 22 Wisan to act as the UEP's Special Fiduciary, until February 24, 2011, when the Utah district 23 court determined the Trust's reformation unconstitutional, Bruce Wisan was the lawful 24 administrator of the UEP.

25 The Utah district court chose not to resolve the issue of whether the UEP's lease 26 agreements, executed under Bruce Wisan's administration of the Trust, are currently or 27 retroactively invalid. Neither the Court's independent research nor the parties' respective 28 briefs offer any authority suggesting that the Cookes' standing to bring the instant action

1  ceases in the event that either their lease is found invalid after the fact or that Robert Black
2  is determined the rightful occupant. Moreover, Plaintiffs' statement that the Cookes maintain
3  a colorable claim to occupancy went unchallenged by Defendants.  It also bears mentioning
4  that, at the time that Defendants refused the Cookes' request for a water connection,
5  Defendants never claimed that their refusal was due to a question of rightful occupancy.
6  Thus, the Cookes have standing to bring this action.

7  Moreover, as mentioned above, at oral argument, Defendants did not seriously dispute
8  that the Cookes may recover damages for the period they had a presumptively valid lease to
9  be on the property even if that lease is later invalidated.  Thus, the result of the declaratory
10 action likely will effect only the rights of the parties going forward.  As a result, because the
11 declaratory action would not likely resolve all issues in this case, regardless of how that case
12 is decided, the Court will not stay this case pending the resolution of Judge Campbell's case.

13 As a final note, the briefing in this matter was ponderous, caused a needless
14 expenditure of judicial resources and was mostly unhelpful.  The Court is willing to assume
15 the parties each understood what the other was claiming, but to a busy Court it failed to add
16 any clarity to the issues, and was bereft of the virtue of brevity.  In the future, the parties are
17 cautioned that if the Court can not quickly ascertain what relief is sought in a motion, the
18 Court will summarily deny the motion.

19 Accordingly,

20 **IT IS ORDERED** that Defendants Hildale-Colorado City Utilities', Twin City
21 Power's, and City of Hildale's Motion to Stay (Doc. 60) is DENIED.

22 **IT IS FURTHER ORDERED** that Defendants' temporarily granted stay of
23 discovery (Doc. 77) is lifted.

24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**IT IS FURTHER ORDERED** that in the event either party makes a claim for attorney fees in this matter, none of the time expended on briefing the motion to stay or oral argument on the motion to stay shall be claimed.

DATED this 16th day of May, 2011.

James A. Teilborg
United States District Judge