Jeffrey C. Matura, State Bar No. 019893
Asha Sebastian, State Bar No. 028250
**Graif Barrett & Matura, P.C.**
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Telephone: (602) 792-5700
Facsimile: (602) 792-5710
jmatura@gbmlawpc.com
asebastian@gbmlawpc.com

Attorneys for Defendant Town of Colorado City

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| RONALD COOKE and JINJER COOKE, husband and wife,<br><br>Plaintiffs,<br><br>THE STATE OF ARIZONA ex rel. TERRY GODDARD, the Attorney General; and THE CIVIL RIGHTS DIVISION OF THE ARIZONA DEPARTMENT OF LAW,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>TOWN OF COLORADO CITY, ARIZONA, et. al.,<br><br>Defendants. | No. 3:10-cv-08105-JAT<br><br>**DEFENDANT TOWN OF COLORADO CITY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendant Town of Colorado City, Arizona moves for summary judgment on all claims alleged in plaintiffs Ronald Cooke and Jinjer Cooke's and plaintiff-intervenor State of Arizona's Joint Second Amended Complaint [Doc. 169]. Summary judgment is proper for the following reasons:

- Count Three fails because 42 U.S.C. § 3601, et seq., provides the Cookes with their exclusive remedy.
- Counts Four through Eight fail because no evidence exists to show disparate treatment, that the requested accommodation is

necessary or reasonable, or that Colorado City interfered with the Cookes' enjoyment of their property.
- Count Nine fails because no evidence exists to show that Colorado City engaged in a pattern or practice of discrimination.
- Count Ten fails because Colorado City is not within an active management area.

For these reasons, summary judgment in Colorado City's favor is appropriate.

This motion is brought pursuant to Federal Civil Procedure Rule 56(a) and is supported by the Court's file, an accompanying Statement of Facts, and the following memorandum of points and authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

This case is about a water policy. The Cookes and the State of Arizona want to make it about much more, but at the end of the day, the sole question is whether Colorado City applied its policy regarding new service culinary water connections in a uniform, non-discriminatory manner.

## I. FACTUAL BACKGROUND.

Ronald Cooke is a former member of the Fundamentalist Church of Jesus Christ of Latter Day Saints ("FLDS") and alleges that he suffers from a severe disability.[1] Mr. Cooke was born in Colorado City and raised within the FLDS.[2] As a teenager, Mr. Cooke left the church and moved to Phoenix.[3] In 2005, he was hit by a truck and suffered severe injuries.[4] In early 2008, Mr. Cooke decided to move back to Colorado City.[5] That is when this dispute began.

---

[1] See Colorado City's Statement of Facts ("SOF"), at ¶ 1, filed concurrently with this Motion.
[2] Id. at ¶ 2.
[3] Id. at ¶ 3.
[4] Id. at ¶ 4.
[5] Id. at ¶ 5.

2

1    The United Effort Plan Trust ("the UEP") owns most of the real property within Colorado City and its neighboring community, Hildale City, Utah. The UEP was established in 1942 to hold and administer property on behalf, and for the benefit, of members of the FLDS. In 2005, the Utah Attorney General filed a lawsuit against the UEP to remove its trustees. The result was that a Utah State Court removed the trustees and appointed Bruce Wisan (an accountant from Salt Lake City, Utah) as the special fiduciary of the UEP.

To obtain property from the UEP, an applicant submits a Petition for Benefits. The UEP reviews the Petition and, if approved, identifies a specific property. The UEP and the applicant then enter into an Occupancy Agreement, which grants the applicant the right to occupy the property. The Cookes submitted a Petition for Benefits to the UEP, dated February 11, 2008.[6] The UEP and its Housing Board then worked with the Cookes to identify a specific property.[7] Seth Cooke, who is Ronald Cooke's brother, was a member of the Housing Board.[8] The UEP and the Cookes then entered into an Occupancy Agreement for a residence located at 420 East Academy Avenue in Colorado City.[9] The residence was only partially constructed and Robert Black asserted a prior interest in the residence.[10] The residence also did not have a culinary water connection or any other utilities.[11]

On July 7, 2007, Colorado City experienced a culinary water shortage when a pump in a primary well failed due to excess demand on the system.[12] Colorado City issued an Executive Order that same day declaring a water emergency.[13] It then requested a water study from Sunrise Engineering, which concluded that "the increased water use

---

[6] Id. at ¶ 6.
[7] Id. at ¶ 7.
[8] Id. at ¶ 8.
[9] Id. at ¶ 9.
[10] Id. at ¶ 10.
[11] Id. at ¶ 11.
[12] Id. at ¶ 12.
[13] Id. at ¶ 13.

3

has severely impacted the water aquifer, and consequently the static levels and flows have dropped. According to the evidence provided, current pumping rates have been more than what would be sustainable through natural recharge."[14] Colorado City, in cooperation with the Utility Board, thereafter adopted a formal water policy for new service culinary water connections.[15] A "new service" is defined as a new service location without an existing meter as of July 2007.[16] To obtain a new service connection, the policy requires the applicant to bring equivalent water to the system, show proof of ownership over that new water, and pay connection charges.[17] This policy was reduced to writing in February 2010.[18]

On October 24, 2008, Ronald Cooke sent a letter to Colorado City and the Utility Board to request a new service culinary water connection and other utilities.[19] Mr. Cooke recognized the "general shortage of water resources."[20] Colorado City told Mr. Cooke to comply with the water policy. To this day, that has not occurred. The Cookes then filed this lawsuit and the State of Arizona intervened. On December 12, 2011, the Cookes and the State of Arizona filed a Joint Second Amended Complaint [Doc. 169]. Colorado City requests summary judgment on each count alleged in that Complaint.[21]

## II. COUNT THREE FAILS BECAUSE 42 U.S.C. § 3601, ET SEQ., PROVIDES THE EXCLUSIVE REMEDY AND NO EVIDENCE EXISTS TO SUPPORT ANY EQUAL PROTECTION VIOLATION.

In Count Three of the Joint Second Amended Complaint [Doc. 169], the Cookes allege that Colorado City violated 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the

---

[14] Id. at ¶ 14.
[15] Id. at ¶ 15.
[16] Id. at ¶ 16.
[17] Id. at ¶ 17.
[18] Id. at ¶ 18.
[19] Id. at ¶ 19.
[20] Id. at ¶ 20.
[21] The Cookes previously stipulated to dismiss Counts One and Two [Doc. 110], which this Court approved on July 15, 2011 [Doc. 111].

4

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Count Three fails because 42 U.S.C. § 3601, et seq., provides the exclusive remedy and no evidence supports the Cookes' claim that Colorado City violated their equal protection rights.

### A.   42 U.S.C. § 3601, et seq., Provides The Exclusive Remedy.

To recover under § 1983, the Cookes must show they have an enforceable federal right, independently secured by a federal statute or the U.S. Constitution. Gonzaga University v. Doe, 536 U.S. 273, 285 (2002). Colorado City can "rebut this presumption by showing that Congress 'foreclosed a remedy under §1983,'" when it created a comprehensive enforcement scheme incompatible with individual enforcement under §1983. Id. at 284 n.4.

The Cookes allege that Colorado City "intentionally, knowingly and continuously engaged in discriminatory practices that denied them equal housing opportunities."[22] Based upon the Cookes' claims and the allegation regarding the Fair Housing Act in Count Four, the Cookes allege violations of the Fair Housing Act to pursue their relief under § 1983.[23]

The next question is whether Congress created individual rights under 42 U.S.C. §§ 3604 and 3617 of the Fair Housing Act. Section 3604 makes it unlawful to make unavailable a dwelling to any person or to discriminate against any person in connection with providing services to that dwelling.[24] Section 3617 makes it unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of any right granted or protected by § 3604.[25] This language makes it clear that Congress intended to create individual rights under the Fair Housing Act.

---

[22] Joint Second Amended Complaint [Doc. 169], at ¶ 106.

[23] The policy and purpose of the federal Fair Housing Act further supports this assumption, as the Act is intended to "vindicate the civil rights of complainants who are subject to housing discrimination," United States v. Nally, 867 F.Supp. 1446, 1451 (N.D.Cal. 1994).

[24] 42 U.S.C. §§ 3604(a) and (b).

[25] 42 U.S.C. § 3617.

1. The final question is whether Congress foreclosed § 1983 relief by creating a comprehensive enforcement scheme under the Fair Housing Act itself. Gonzaga, 536 U.S. at 284 n.4. The Supreme Court has concluded that "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under §1983." City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 121 (2005). Section 3613 of the Fair Housing Act permits private persons to seek judicial relief of an alleged discriminatory housing practice and allows the aggrieved person to pursue relief in the federal courts.[26] The Fair Housing Act's enforcement mechanism is therefore sufficiently comprehensive to foreclose § 1983 enforcement. See South Middlesex Opportunity Council, Inc. v. Town of Framingham, CV 07-12018-DPW, 2008 WL 4595369 (D.Mass. Sept. 30, 2008) ("the FHA itself sets forth a comprehensive enforcement mechanism through which private persons can seek relief for violations of §§ 3604 and 3617 of the FHA . . . that . . . forecloses complementary relief through §1983.").

The Ninth Circuit has not ruled on this issue; however, Vinson v. Thomas, 288 F.3d 1145 (9th Cir. 2002), is helpful. There, the court followed the reasoning of the Fifth, Eighth, and Eleventh Circuits and held that "a plaintiff cannot bring an action under [§ 1983] . . . to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act" because these statutes contain specific comprehensive remedial schemes. Id. at 1156; see also Sinisgallo v. Town of Islip Housing Authority, 2012 WL 1888140, __ F.Supp.2d __ (E.D.N.Y. 2012) (collecting cases holding that the FHA, ADA, and Rehabilitation Act contain comprehensive remedial schemes and so a plaintiff is foreclosed from asserting claims under § 1983 for the deprivation of rights guaranteed by those federal laws). The same analysis applies to the Fair Housing Act.

The Fair Housing Act contains its own remedies, which the Cookes seek in Count Four. The Cookes' cannot also assert a separate claim under § 1983 for the deprivation of

---

[26] 42 U.S.C. § 3613.

6

the same rights guaranteed under the Fair Housing Act. Summary judgment is therefore proper.

### B. No Evidence Supports Any Equal Protection Violation.

Count Three also alleges that Colorado City engaged in a "policy, pattern and practice of discrimination against non-FLDS affiliated residents of Colorado City, including the Cookes, due to [their] lack of religious affiliation with FLDS and because of [Ron] Cooke's disabilities."[27] The Cookes therefore assert violations of the Equal Protection Clause of the Fourteenth Amendment based upon their religion and disabilities. To support this claim, the Cookes must prove four elements: (1) Colorado City treated them differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) Colorado City acted with discriminatory intent in applying this classification; and (4) they suffered injury as a result of the discriminatory classification. Moua v. City of Chico, 324 F.Supp.2d 1132, 1137 (E.D.Cal. 2004).

#### 1. No Evidence Exists That Colorado City Treated The Cookes Differently Than Other Similarly-Situated Individuals.

The first step "is to identify the [defendant's] classification of groups." Freeman v. City of Santa Ana, 68 F. 3d 1180, 1187 (9th Cir. 1995). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005). "Once the plaintiff establishes governmental classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared." Freeman, 68 F.3d at 1187. Finally, disability is not a suspect class for equal protection purposes. Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997).

No evidence exists that Colorado City provided a new culinary water connection to someone in a similar situation as the Cookes. Colorado City does not approve or disapprove of any water connection.[28] Colorado City therefore could not have treated the

---

[27] Joint Second Amended Complaint [Doc. 169], at ¶ 105.
[28] SOF at ¶ 21.

7

Cookes any differently. Also, the only new water connection approved since the Cookes moved to Colorado City was to Twin City Improvement Association, which complied with the policy to receive a new service culinary water connection.[29] The Cookes did not comply with the same policy. No different treatment exists. "Disability" is also not a suspect class. The Cookes therefore cannot meet this element.

### 2. No Evidence Exists That Colorado City Intentionally Engaged In Any Alleged Discrimination.

The Cookes must also show that Colorado City's water policy had a discriminatory impact and that Colorado City acted with an intent or purpose to discriminate based upon the Cookes' membership in a class of non-FLDS residents. See Darensberg v. Metropolitan Transp. Com'n, 636 F.3d 511, 522 (9th Cir. 2011). The Cookes must also show that Colorado City acted "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. at 523; see Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1135 (9th Cir. 2003) ("on the issue of motive, the plaintiffs must 'put forward specific, nonconclusory factual allegations that establish improper motive.'").

No evidence exists that Colorado City acted with any intent or improper motive. As noted above, Colorado City does not approve or disapprove of any request for a new culinary water connection.[30] If Colorado City were not involved in that process, it could not intentionally act to discriminate against the Cookes. No other evidence exists.

### 3. Colorado City's Water Policy Is Rationally Related To A Legitimate Governmental Purpose.

"For equal protection purposes, heightened scrutiny is applicable to a statute that applies selectively to religious activity <u>only</u> if the plaintiff can show that the basis for the distinction was religious, not secular. If the basis for the distinction is secular, then this court 'review[s] the statute to determine whether it classif[ies] the persons it affects in a

---

[29] Id. at ¶ 22.
[30] Id. at ¶ 21.

8

1 manner rationally related to legitimate governmental objectives.'" Droz v. C.I.R., 48 F.3d 1120, 1125 (9th Cir. 1995) (emphasis added). With respect to Ronald Cooke's disabilities, "[t]he physically disabled are not a protected class for [equal protection purposes] and so rational basis scrutiny is appropriate." Gamble, 104 F.3d at 307.

Colorado City's water policy for new service locations does not target any religious belief or conduct and does not impose any burden based upon religion.[31] It is a neutral policy applied in a neutral manner. As a result, a rational basis scrutiny level applies, which means this Court should uphold the policy if "it rationally relates to a legitimate government objective." Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988).

A water shortage exists within Colorado City.[32] This shortage culminated in a well pump failure in July 2007.[33] After that failure, Colorado City obtained additional information from engineers about the water shortage and solidified its policy to only permit new service culinary water connections if the applicant brings equivalent water to the system, shows that he or she owns the water rights, and pays connection fees.[34] Limiting new water connections in this manner is tied to the water shortage. No evidence exists otherwise, as Colorado City's policy is rationally related to its legitimate objective to protect its residents and ensure adequate water for all.

Based upon these facts, no evidence exists to support the Cookes' claim that Colorado City violated their equal protection rights. Summary judgment on Count Three is therefore appropriate for this additional reason.

**III. COUNTS FOUR, FIVE, SIX, SEVEN, AND EIGHT FAIL BECAUSE NO EVIDENCE EXISTS TO SHOW DISPARATE TREATMENT, THAT THE REQUESTED ACCOMMODATION IS REASONABLE, OR THAT COLORADO CITY INTERFERED WITH THE COOKES' ENJOYMENT OF THEIR PROPERTY.**

---

[31] Id. at ¶ 23.
[32] Id. at ¶¶ 12 – 14.
[33] Id. at ¶ 12.
[34] Id. at ¶¶ 14 – 18.

In Count Four of the Joint Second Amended Complaint [Doc. 169], the Cookes allege that Colorado City violated 42 U.S.C. §§ 3604(a), (b), and (f) and § 3617 of the federal Fair Housing Act. In Counts Five through Eight, the Cookes and the State of Arizona allege that Colorado City violated A.R.S. §§ 41-1491.19, 41-1491.14(A) and (B), and § 41-1491.18 of the Arizona Fair Housing Act. The federal and Arizona Fair Housing Acts are substantively identical, and therefore Arizona Courts look to federal law to interpret the Arizona Fair Housing Act. Canady v. Prescott Canyon Estates Homeowners Ass'n, 204 Ariz. 91, 93 n.3, 60 P.3d 231, 233 n.3 (Ariz. Ct. App. 2001) ("Because the provisions of Arizona's Fair Housing Act . . . are virtually identical to those provisions of the federal act, federal case authority is persuasive in interpreting Arizona's statute."). Colorado City addresses them together below.

**A.     42 U.S.C. § 3604(a) and A.R.S. § 41-1491.14(A).**

Pursuant to 42 U.S.C. § 3604(a) and A.R.S. § 41-1491.14(A), it is unlawful to refuse to rent or sell a dwelling to an individual after a bona fide offer is made due to religion and other protected classes.[35] To prevail, the Cookes must show that: (1) they are members of a protected class; (2) they applied for and were qualified to buy a residence within Colorado City; (3) Colorado City denied them a residence; and (4) the residence was, in fact, available. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246 (9th Cir. 1997). With respect to the last element, the focus is on whether the residence was made unavailable, not the impact on the habitability of the residence. Cox v. City of Dallas, Texas, 430 F.3d 734, 741 (5th Cir. 2005).

No evidence exists to support the third and fourth elements. Regarding the third element, Colorado City did not deny the Cookes any residence, as the Cookes did not apply to Colorado City for a residence.[36] They submitted a Petition for Benefits to the UEP, which then identified the subject property for the Cookes and entered into an

---

[35] 42 U.S.C. 3604(a) and A.R.S. § 41-1491.14(A).
[36] SOF at ¶ 6.

10

Occupancy Agreement for that property.[37] None of this involved Colorado City. Regarding the fourth element, the Cookes' allegation that Colorado City discriminated against them by not providing a new service culinary water connection does not impact the "availability" of the residence; in fact, the Cookes currently live in that residence. At most, it impacts the habitability of the residence only, but that is insufficient for the Cookes to meet their burden. Summary judgment on these statutes is proper.

### B.     42 U.S.C. § 3604(b) and A.R.S. § 41-1491.14(B).

Pursuant to 42 U.S.C. § 3604(b) and A.R.S. § 41-1491.14(B), it is unlawful to discriminate against any person in the providing of services or facilities in connection with a dwelling due to that person's religion.[38] To prevail, the Cookes must prove that: (1) they are a member of a protected class; (2) they applied for and were qualified to receive a building permit or utility service; (3) Colorado City denied the permit or utility service; and, (4) Colorado City approved a building permit or utility service for a similarly situated party during the same timeframe. Kennedy v. City of Zanesville, Ohio, 505 F.Supp.2d 456, 495 (S.D. Ohio 2007).

No evidence supports the second or fourth elements. Regarding the second element, the Cookes never submitted an application for a building permit to Colorado City. It is also undisputed that the Cookes did not comply with the water policy to receive a new service culinary water connection, as the Cookes did not bring their own water to the system, prove their ownership rights to the new water, or pay the required fees.

Regarding the fourth element, the only new service culinary water connection approved during the same timeframe was to Twin City Improvement Association, and the undisputed facts show that it complied with all the requirements of the water policy.[39] No evidence exists that someone who did not comply with the policy (as is the case with the

---

[37] Id. at ¶¶ 6 – 9.
[38] 42 U.S.C. § 3604(b) and A.R.S. § 41-1491(B).
[39] SOF at ¶ 22.

11

1  Cookes) received a new service water connection. Summary judgment on these statutes is
2  also appropriate.[40]

### C.   42 U.S.C. § 3604(f) and A.R.S. § 41-1491.19.

Pursuant to 42 U.S.C. § 3604(f) and A.R.S. § 41-1491.19, it is unlawful to discriminate in the sale or rental of a dwelling due to a person's disability.[41] Discrimination includes a refusal to make a reasonable accommodation or modification if necessary to enable the person to equal use and enjoyment of the premises.[42]

To prevail, the Cookes must show the following: (1) Ronald Cooke is disabled; (2) Colorado City knew or should reasonably have known about his disability; (3) the requested accommodation was necessary to afford Ronald Cooke an equal opportunity to use and enjoy the subject property; (4) the accommodation is reasonable; and (5) Colorado City refused to make the requested accommodation. DuBois v. Assoc. of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175 (9th Cir. 2006).

No evidence exists that the requested accommodation (i.e., a new service culinary water connection) was necessary or reasonable. Seth Cooke, who was on the UEP Housing Board, showed the Cookes other suitable properties within Colorado City and which had existing water connections.[43] The Cookes rejected these other properties and instead chose the subject property, which did not have an existing culinary water connection and was only partially constructed.[44] Because other residences were available to meet Ronald Cookes' needs, the Cookes cannot show that the requested

---

[40] Based upon Count Four of the Joint Second Amended Complaint [Doc. 169], it appears the Cookes are bringing their 42 U.S.C. § 3604(b) claim under a disparate treatment theory. However, if the Cookes are instead bringing their claim under a disparate impact theory, the claim still fails because the Cookes have not provided any evidence to show the discriminatory impact via statistical evidence. Gamble v. City of Escondido, 104 F.3d 300, 306 (9th Cir. 1997) (citing Pfaff v. United States Dep't of Housing & Urban Dev., 88 F.3d 739, 746 n.2 (9th Cir. 1996)).
[41] 42 U.S.C. § 3604(f) and A.R.S. § 41-1491.19.
[42] 42 U.S.C. § 3604(f)(3)(B) and A.R.S. § 41-1491.19(E)(1).
[43] SOF at ¶ 7.
[44] Id. at ¶¶ 7 – 11.

1  accommodation was necessary or reasonable, as the Cookes created their living situation for themselves. Summary judgment on these statutes is therefore proper.

### D.     42 U.S.C. § 3617 and A.R.S. § 41-1491.18.

Pursuant to 42 U.S.C. § 3617 and A.R.S. § 41-1491.18, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by the federal and Arizona Fair Housing Acts, respectively.[45] To prevail, the Cookes must show the following: (1) they were engaged in a protected activity; (2) they suffered an adverse reaction via coercion, intimidation, threats, or interference; and (3) a causal link exists between the two. Brown v. City of Tucson, 336 F.3d 1181, 1191-92 (9th Cir. 2003).

No evidence exists that Colorado City coerced, intimidated, threatened, or interfered with the Cookes' use and enjoyment of their property. All Colorado City has done is require the Cookes to comply with the policy to obtain a new service culinary water connection. Asking the Cookes to comply with a policy does not equate to coercion or intimidation. Therefore, summary judgment is proper.

### IV.   COUNT NINE FAILS BECAUSE NO EVIDENCE EXISTS TO SHOW A PATTERN OR PRACTICE OF DISCRIMINATION UNDER A.R.S § 41-1491.35.

In Count Nine of the Joint Second Amended Complaint [Doc. 169], the State of Arizona claims that Colorado City engaged in a pattern or practice of discrimination in violation of A.R.S. § 41-1491.35 of the Arizona Fair Housing Act. After two years of discovery, the State of Arizona has not uncovered a single fact to support this claim.

A.R.S. § 41-1491.35(A) states the following:

> A. The attorney general may file a civil action in superior court for appropriate relief if the attorney general has reasonable cause to believe that either:
>
> 1. A person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article.

---

[45] 42 U.S.C. § 3617 and A.R.S. § 41-1491.18.

13

> 2. A person has been denied any right granted by this article and that denial raises an issue of general public importance.[46]

No Arizona authority interprets this statute, but federal cases are persuasive. See Canady v. Prescott Canyon Estates Homeowners Ass'n., 204 Ariz. 91, 93 n.3, 60 P.3d 231 n.3 (Ariz. Ct. App. 2001); Wilson de Playa de Serrano, 211 Ariz. 511, 512 n.1, 123 P.3d 1148 n.1 (Ariz. Ct. App. 2005).

To establish a pattern or practice, the State of Arizona must do more than submit proof of discrimination; it must show that the alleged discrimination was the "standard operating procedure, the regular rather than the unusual practice." United States v. Garden Homes Management, Corp., 156 F.Supp.2d 413, 420 (D.N.J. 2001) (citing Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977)). And while no threshold number of incidents exists before the State can bring this claim, isolated, accidental, or sporadic instances of discrimination are insufficient. Id.

The State of Arizona alleges that "the Cookes and other non-FLDS persons who reside on or who have applied to reside on land owned by the UEP in Colorado City, Arizona and seek to have water connections and other utilities provided by Defendants for housing on UEP property without regard to religion have been denied rights . . . ."[47] The State of Arizona must therefore show that non-FLDS persons applied for "water connections and other utilities," but were denied due to Colorado City's religious discrimination.

The State of Arizona disclosed several witnesses to support this claim. All were deposed, and none testified that they applied for a water connection or other utilities, or that Colorado City ever denied them a water connection or other utilities. For example:

Steven Bateman: Testified that he has never submitted any application for water or other utilities because the UEP has not yet granted him any property.[48]

---

[46] A.R.S. § 41-1491.35(A).
[47] Joint Second Amended Complaint [Doc. 169], at ¶¶ 142, 144 (emphasis added).
[48] SOF at ¶ 24.

14

A. Marion Timpson: Testified that he has never submitted an application or paid any fees for water service within Colorado City or Hildale, and that neither Colorado City nor Hildale has ever denied him water service or any other utility.[49]

Aaron Timpson: Testified that he has never submitted an application for a water connection or any other utilities for property within Colorado City and, therefore, neither Colorado City, Hildale, nor the utility departments have ever denied him any water connection or other utilities.[50]

Matthew Musser: Testified that he has never submitted an application for water or other utilities for property within Colorado City, never paid any fees related to any application, and believes he could have obtained other utilities if he had tried.[51]

Joseph Young: Testified that he was aware of the application process and the need to pay fees, but did not submit any application for water or other utilities and has never paid any fees.[52]

John Cook: Testified that a representative from the water company told him that Hildale City had a policy to not provide new water connections unless the applicant brought water to the system, and that he did not fill out an application for water or other utilities.[53]

None of these witnesses support the State of Arizona's pattern or practice claim, as not one submitted an application for a water connection or other utilities. And if no applications were submitted, no denials could occur. Summary judgment in Colorado City's favor is therefore appropriate.

---

[49] Id. at ¶ 25.
[50] Id. at ¶ 26.
[51] Id. at ¶ 27.
[52] Id. at ¶ 28.
[53] Id. at ¶ 29.

## V. COUNT TEN FAILS BECAUSE COLORADO CITY IS NOT WITHIN AN ACTIVE MANAGEMENT AREA.

In the Count Ten of the Joint Second Amended Complaint [Doc. 169], the Cookes request that this Court issue a Writ of Mandamus ordering Colorado City to provide them with culinary water.[54] The Cookes rely upon A.R.S. § 45-492. This statute does not apply to Colorado City.

A.R.S. § 45-492(A) is part of the Arizona Groundwater Code and states the following:

> Except as provided in subsection D of this section, <u>in an active management area</u>, a city, town or private water company shall have the right to withdraw and transport groundwater within its service area for the benefit of landowners and residents within its service area, and the landowners and residents are entitled to use the groundwater delivered, subject to:
>
> 1. Articles 8 and 8.1 of this chapter relating to transportation of groundwater.
>
> 2. Conservation requirements developed by the director pursuant to article 9 of this chapter.
>
> 3. Section 45-493, subsection D.[55]

A.R.S. § 45-491(A) further limits the scope of A.R.S. § 45-492 to "active management areas." A.R.S. § 45-402 defines an "active management area" as "a geographical area which has been designated pursuant to article 2 of this chapter as requiring active management of groundwater or, in the case of the Santa Cruz active management area, active management of any water, other than stored water, withdrawn from a well."[56]

Five active management areas exist within Arizona: Prescott, Phoenix, Pinal, Tucson, and Santa Cruz.[57] Colorado City is not within any of those areas. Colorado City is therefore not subject to regulation under A.R.S. § 45-492. And if the statute does not

---

[54] Joint Second Amended Complaint [Doc. 169], at ¶¶ 147 – 150.
[55] A.R.S. § 45-492(A) (emphasis added).
[56] A.R.S. § 45-402(2).
[57] A.R.S. § 45-411(A).

16

apply to Colorado City, this Court cannot issue a Writ of Mandamus to order Colorado City to comply with it. Count Ten therefore fails as a matter of law.

## VI.  CONCLUSION.

As stated at the beginning, this case is about a water policy. After dozens of depositions and tens of thousands of documents disclosed during discovery, no evidentiary support exists for the Cookes' and the State of Arizona's claims against Colorado City. Colorado City is therefore entitled to summary judgment on all counts alleged in the Joint Second Amended Complaint.

Dated this 15th day of June 2012.

GRAIF BARRETT & MATURA, P.C.


By /s/ Jeffrey C. Matura
Jeffrey C. Matura
Asha Sebastian
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Attorneys for Defendant Town of Colorado City

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June 2012, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

William G. Walker
William G. Walker, P.C.
177 N. Church Ave., Suite 700
Tucson, Arizona 85701
Attorney for Plaintiffs and Defendants Ronald and Jinjer Cooke

Sandra R. Kane
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007
Attorney for Plaintiff-Intervenor State of Arizona

1  Bill Richards
2  Bade Baskin & Richards
   80 East Rio Salado Parkway, Suite 511
3  Tempe, Arizona 85281
   Attorneys for Plaintiff-Intervenor State of Arizona
4
5  R. Blake Hamilton
   Stirba & Associates
6  215 S. State St., Suite 750
   Salt Lake City, UT 84110-0810
7  Attorneys for Defendants City of Hildale,
   Hildale-Colorado City Utilities, Twin City
8  Water Authority and Twin City Power
9

10
   /s/ Lynette Lohsandt
11

12  4823-9409-9471, v. 1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28