1  **Firm e-mail address:  walkerassistant@aol.com**

2  **William G. Walker, Esq.**
   **WILLIAM G. WALKER, P.C.**
3  **177 N. Church Avenue, Suite 700**
   **Tucson, AZ 85701**
4  **Telephone:  (520) 622-3330**
   **PCCN:   60292**
5  **SBN:      005361**
   **wgwpc@aol.com**
6
   **Attorney for** Plaintiffs Ronald and Jinjer Cooke
7

8
                **IN THE UNITED STATES DISTRICT COURT**
9
                  **FOR THE DISTRICT OF ARIZONA**
10
   RONALD COOKE AND JINJER COOKE,   )
11 husband and wife,                )
                                    )
12     Plaintiffs,                  )        No: 3:10-CV-08105--JAT
                                    )
13 THE STATE OF ARIZONA *ex rel*.    )
   THOMAS C. HORNE, the Attorney General; )  **PLAINTIFFS' MOTION FOR**
14 and THE CIVIL RIGHTS DIVISION OF )       **PARTIAL SUMMARY**
   THE ARIZONA DEPARTMENT OF LAW,   )       **JUDGMENT**
15                                  )       **RE: COUNTS FOUR, FIVE AND**
       Plaintiff-Intervenor,        )       **TEN OF THE JOINT SECOND**
16                                  )       **AMENDED COMPLAINT/**
                                    )       **MOTION FOR PARTIAL**
17                                  )       **SUMMARY JUDGMENT**
   TOWN OF COLORADO CITY, ARIZONA;  )       **RE: VICARIOUS LIABILITY**
18 CITY OF HILDALE, UTAH; HILDALE-  )       **OF DEFENDANTS AND**
   COLORADO CITY UTILITIES (Hildale- )      **INDIVIDUALS**
19 Colorado City Power, Water, Sewer and )
   Gas Department); TWIN CITY WATER )
20 AUTHORITY, INC., a Utah non-profit )
   corporation; TWIN CITY POWER; et al, )
21                                  )       **(Oral Argument Requested)**
       Defendants.                  )
22 _____)

23        Plaintiffs, Ronald Cooke and Jinjer Cooke, husband wife, by and through their attorney

24 undersigned, hereby request that this Court grant partial summary judgment regarding the

25 liability of Defendants concerning Counts Four, Five and Ten of the Joint Second Amended

26 Complaint, previously filed with this Court.   Plaintiffs also request that the Court grant

27 summary judgment that various departments of the Cities and individuals, when acting in their

28 official capacities, bind the Cities.   This motion is supported by the accompanying

1   Memorandum of Points and Authorities and the Joint Statement of Facts filed by Plaintiffs

2   and Plaintiff-Intervenor filed simultaneously herewith.

3                        **MEMORANDUM OF POINTS AND AUTHORITIES**

4   **I.      Introduction**

5         Plaintiffs Ronald Cooke and Jinjer Cooke hereby file their Motion for

6   Partial Summary Judgment specifically concerning the liability of Defendants concerning

7   Counts Four, Five and Ten of the Joint Second Amended Complaint.

8         Counts Four and Five mirror causes of action concerning Defendants' refusal to

9   provide reasonable accommodations to Plaintiff Ronald Cooke because of his mental and

10   physical disabilities in connection with the provision of services and facilities relating to

11   housing.

12         Count Ten concerns allegations that the Defendants discriminated against the Cookes

13   by refusing to provide the Cookes water on the same terms and conditions as other residents

14   of Colorado City in violation of Arizona state law.

15         Plaintiffs request that this Court grant partial summary judgment against the

16   Defendants with respect to each of these Counts solely on the issue of liability, with relief to

17   be determined at trial.  Plaintiffs also request that the Court grant summary judgment that

18   various departments of the Cities and individuals, when acting in their official capacities, bind

19   the Cities.

20   **II.     Standard for Summary Judgment**

21         Pursuant to Rule 56, Federal Rules of Civil Procedure, summary judgment is proper:

22   "if the pleadings, depositions, answers to interrogatories and admissions on file, together with

23   the affidavits, if any, show that there is no genuine issue as to any material fact and that the

24   moving party is entitled to judgment as a matter of law."

25         The party moving for summary judgment has the initial burden of showing the absence

26   of a genuine issue of material fact.  *See Adickes v. S. H. Kress & Co.*, 398 U.S.  144, 90 S. Ct.

27   1598, 26 L.Ed. 2d 142 (1970); *Zoslaw v. MCA Distrib.Corp.* 693 F.2d 870, 883 (9th Cir.

28                                     2

1    1982).  Once the movant's burden is met by presenting evidence which, if uncontroverted,

2    would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent

3    to set forth specific facts demonstrating that there is a genuine issue for trial.  *Anderson v.*

4    *Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986).

5         If the party seeking summary judgment meets its burden, summary judgment will be

6    granted unless there is significant probative evidence tending to support the opponent's legal

7    theory.  *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1321 (9th Cir. 1981);

8    *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270 (9th Cir. 1979).  In order to

9    defeat summary judgment, the opponent must demonstrate that there is a material fact at issue;

10   that is, the evidence must be such that a reasonable jury could return a verdict for the non-

11   moving party.  *Anderson v. Liberty Lobby, Inc., supra*, at 477 U.S. 242.

12        In this case, Plaintiffs maintain that there is no material issue of disputed fact sufficient

13   to submit the issues discussed below for a factual determination.

14   **III.    The Court Should Grant Summary Judgment Regarding the Liability of
           Defendants Concerning Counts Four and Five of the Joint Second Amended**
15         **Complaint Because Uncontested Facts Establish That Defendants Refused to
           Make a Reasonable Accommodation in Providing Culinary Water to the Dwelling**
16         **of Ronald Cooke.**

17        Count Four of the Joint Second Amended Complaint alleges, among other things, that

18   the Defendants violated the rights of the Plaintiffs under the Federal Fair Housing Act, 42

19   U.S.C. §3601, *et seq.*, by refusing to make a reasonable accommodation in connection with

20   the dwelling of Plaintiff Ronald Cooke by failing to provide him with water and electricity

21   because of his mental and physical disabilities.

22        Count Five of the Joint Second Amended Complaint alleges that the Defendants

23   violated the rights of the Plaintiffs under the Arizona State Fair Housing Act, A.R.S. § 41-

24   1491.19, by refusing to make a reasonable accommodation in connection with the dwelling of

25   Plaintiff Ronald Cooke by failing to provide him with, among other things, culinary water

26   because of his mental and physical disabilities.

27        Plaintiffs Ronald and Jinjer Cooke assert that the undisputed facts contained in the

28                                          3

1  Joint Statement of Facts submitted by Plaintiffs and Plaintiff-Intervenor support all of the

2  elements of the claims in Counts Four and Five of failure to provide reasonable

3  accommodations under Federal and Arizona law.

4        Plaintiff-Intervenor has briefed this argument extensively as it relates to violations of

5  State law under A.R.S. § 41-1491.19 of the Arizona Fair Housing Act.   Plaintiff-Intervenor's

6  analysis of a violation of Arizona State law regarding reasonable accommodation

7  requirements under the facts of this case mirrors the argument which Plaintiffs would make

8  under Federal law since analysis of violations of Arizona State law have depended on an

9  analysis of the Federal statute and cases. *See generally  Canady v. Prescott Canyon*

10 *Homeowners Association*, 204 Ariz. 91, 60 P.3d 231 ( App. 2000).

11       Since the analysis is the same for violations of Arizona and Federal law concerning

12 reasonable accommodations, in order to avoid making a duplicate analysis, Plaintiffs hereby

13 incorporate by reference the arguments and analysis made by Plaintiff-Intervenor State of

14 Arizona in its Motion for Summary Judgment concerning reasonable accommodations.

**IV.    Plaintiffs Are Entitled to Summary Judgment on Count Ten of the Joint Second Amended Complaint Because Defendants Have Discriminated Against the Plaintiffs by Denying Them a Culinary Water Connection on the Same Basis That They Have Granted Culinary Water Connections to  Other Residents of the City.**

The undisputed facts in this case demonstrate that the Plaintiffs Ronald Cooke and

Jinjer Cooke were denied a water hookup for the property that they occupied at 400/420 West

Academy Avenue in Colorado City, Arizona. *JSOF, ¶¶ 91, 93.*[1]  The action denying them a

water connection was taken by the Joint Utility Board, acting under the authority of

Defendants Hildale and Colorado City. *JSOF, ¶¶ 91, 93.*  Jonathan Fischer, President of the

Joint Utility Board, testified at his deposition that the action of the Joint Utility Board in

denying water to the Cookes was because of the policy of the Cities to deny water connections

to properties which did not have prevoius water connections unless those properties brought

---

[1]  Citations to the Joint Statement of Facts of Plaintiff and Plaintiff-Intervenor in Support of Plaintiffs' Motions for Summary Judgment are cited herein as "JSOF ¶_____."

4

1    new water to the Cities' water supply. *JSOF, ¶¶ 93-94.* Fischer further testified at his

2    deposition that properties which had previous water connections were permitted to resume

3    service without the requirement that they bring new water to the Cities. *JSOF, ¶ 94.*

4         The policy of the Cities, as alleged by the President of the Joint Utility Board,

5    discriminates between those persons in the service area of the Cities who have not had prior

6    water connections and those who reside on a property where a prior water connection existed.

7    According to the policy described by Fischer,[2] the distinction is not between persons who had

8    or did not have prior water connections, but merely related to whether the properties had prior

9    connections.

10        Under Arizona law, all inhabitants of a city must be treated equally with respect to the

11   availability of water services.

12        In *Town of Wickenberg v. Sabin*, 68 Ariz. 75, 200 P.2d 342 (S. Ct. 1948), the Arizona

13   Supreme Court considered a mandamus action brought by an inhabitant of the Town of

14   Wickenberg, Arizona, against the Town for failure of the municipality to provide him with

15   water and electrical service.  In that case, *Sabin* made application to the town clerk for water

16   and electrical service and was advised by the town clerk that his application would be denied

17   unless he put up a $50 deposit to guarantee the building of a permanent residence on the lot.

18   *Sabin* sued the city upon the theory that the requirement was an unjust discrimination against

19   him because others living in the town were not required to pay a similar deposit.

20        In upholding the decision of the trial court to issue a writ of mandamus ordering

21   services to the defendant under the same terms and conditions of others, the Arizona Supreme

22   Court indicated that all inhabitants of the city  must be treated equally and are entitled to the

23   same services under the same terms.

24   _____

25        [2]  Plaintiffs rely on the description of the President of the Joint Board, Jonathan Fischer, concerning the alleged policy because Plaintiffs admit that there was no written policy concerning new water connections in 2008 at the time Plaintiffs made their request for a new

26   water connection and it was denied by the Cities.  Plaintiffs dispute the allegation by the Cities that  any such policy existed in 2008, when the Cookes were denied water, but assume that such

27   policy existed at that time for the purposes of this motion.

28

In *Sabin*, the Arizona Supreme Court indicated as follows:

> The law on discrimination as applied to public service corporations generally is well settled. *McQuillin Municipal Corporations,* 2d Ed., Vol 4, section 1829, states:
>
> > 'The rule forbidding unjust discrimination has been variously expressed: The charges must be equal to all for the same service under like circumstances. *A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price* it makes to every other patron for the same or substantially the same or similar service.' It 'must be equal in its dealings with all.' It 'must treat the members of the general public alike.'
>
> > \* \* \*
>
> > '*All should be treated alike; equality of rights requires equality of service.*' (Emphasis added).

*Sabin, supra,* 200 P.2d at 343..   See also *TDB Tucson Group, L.L.C., vs. City of Tucson*, 228 Ariz. 120, 263 P.3d 669 (App. 2011) (although it is not required to do so, once a municipality decides to provide a utility service to its residents, it must do so for all without discrimination.).

The  fact is that it would cost the Cities no more, in either short term or long term costs, to hook the Cookes up to culinary water than it would to hook up someone who had a prior water connection.  All direct costs would be borne by the Cookes.  Since there is an 8-inch water line running directly in front of the Cookes' house, the cost to be borne by the Cookes would be only $750.00**.** *JSOF, ¶¶ 102-104.*   Neighbors of the Cookes, who reside on the same block, have lateral connections to this water line. *JSOF, ¶ 71.* Additionally, a culinary water connection for the Cookes would have a negligible effect on the water system of the Cities. *JSOF, ¶ 103-104.*

Therefore, the Cookes stand in a substantially similar situation to any other inhabitant of the City, regardless of whether there is a prior water connection or not. Requiring some inhabitants of the City to contribute water to the system in order to get a new

1   hookup while allowing others a hookup without such price discriminates between inhabitants

2   and is illegal under Arizona law.

3   **V.    The Court Should Grant Summary Judgment, Finding That Various
         Departments and Individuals Are Servants of the Cities When Acting in Their**
4   **     Municipal Capacities.**

5           The Plaintiffs seek partial summary judgment finding:  1) that the town council, utility

6   and building departments, and Marshal's Office of the Town of Colorado City, Arizona

7   ("Colorado City") are sub-parts of Colorado City whose conduct is legally considered the

8   conduct of the town; and 2) that the mayors, individual council members, employees of the

9   utility and building departments, employees of the Marshal's Office, and the Utility Board

10  and individual Utility Board members of the "Twin Cities" of Colorado City and the City of

11  Hildale, Utah ("Hildale") are servants of the Twin Cities when acting in their municipal

12  capacities.

13          **A.    Partial Summary Judgment on Whether Various Departments and
               Individuals Are Sub-Parts or Servants of the Twin City Defendants Will**
14  **           Assist the Jury and Streamline Trial.**
    **           (1)  Traditional Standards of Vicarious Liability Apply to the Statutory**
15  **                Housing Claims Asserted Here.**

16          Municipalities are liable for violations of the federal Fair Housing Act ("FHA") and

17  the Arizona Fair Housing Act ("AZFHA") they commit.  *See, e.g., The Committee*

18  *Concerning Community Improvement v. City of Modesto,* 583 F.3d 690 (9th Cir. 2009); *Silver*

19
20  *Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001); *LeBlanc-*

21  *Sternberg v. Fletcher*, 67 F.3d 412 (2nd Cir. 1995).  The U.S. Supreme Court has affirmed that

22  an FHA claim "is, in effect, a tort action" which also embraces vicarious liability under

23
24  traditional *respondeat superior* standards and theories by which principals are held liable for

25  the conduct of their agents.  *Meyer v. Holley*, 537 U.S. 280, 285-291 (2003) (citing *Curtis v.*

26  *Loether*, 415 U.S. 189, 195-196 (1974)). As the AZFHA parallels the language and intent of

27  the federal FHA, the same traditional standards of vicarious liability apply to the AZFHA

28                                                  7

1    claims asserted here. *Compare* 42 U.S.C. §§ 3602, 3604 *with* A.R.S. §§ 41-1491, 41-1491.14,

2    41-1491.19; *Wilson*, *211 Ariz. at 512, n. 1, 123 P.3d at 1149 n.1*; *Canady*, *204 Ariz. at 92-93;*

3    *60 P.3d at* 232-33.

4

5           **(2)   Answering Whether Various Actors Were Sub-Parts or Servants of the**
6           **Twin Cities Involves Questions of Law Whose Early Determination Will**
            **Help the Jury.**

7           The Plaintiffs are seeking summary judgment on multiple theories, but questions of

8    direct and vicarious liability are implicated by the other claims that need to be tried in this

9    case.  After all, any remaining FHA and AZHA claims rest on conduct by multiple sub-parts

10   and servants of the Twin Cities.  The Plaintiffs assert that elected and appointed officials,

11   employees and other agents of the Twin Cities have denied Plaintiffs Ron and Jinjer Cooke

12   water services needed to accommodate Mr. Cooke's disability and have discriminatorily

13   denied the Cookes and other Colorado City residents who are not members of the

14   Fundamentalist Church of Jesus Christ of Latter Days Saints ("FLDS") the use and enjoyment

15   of housing in Colorado City by denying water connections, manipulating building permit

16   practices, allowing harassment by FLDS Church members, refusing to protect property rights

17

18   for non-FLDS members, and using police and prosecutorial resources to harass non-FLDS

19   members and interfere with their use of property in Colorado City.  Questions of whether the

20   Twin Cities are directly or vicariously liable for all such conduct will be at issue.

21

22           To answer those questions the trier will need to decide if the department or individual

23   whose conduct is at issue was a sub-part or servant of the Twin Cities.  Where the facts about

24   what relationship each department, entity or person had with the municipal defendants are not

25

26   in dispute, these are issues of law that are proper for summary judgment.  *See Brock v.*

27

28                                                  8

*Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("[t]he legal conclusion to be drawn from those facts -- whether workers are employees or independent contractors -- is a question of law."); *Larsen v. Arizona Brewing Co.*, 84 Ariz. 191, 198-199, *325 P.2d 829, 834* (Ariz. 1958) (where evidence presents no conflict on question of whether a master-servant relationship existed, the court properly grants a motion for directed verdict on the question as a matter of law.); *Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 140-141, 65 P.2d 35, 39 (1937).[3]  And, answering such legal issues now will simplify and clarify issues for the jury. Specifically, pre-trial confirmation that the Twin Cities' utility and building departments and employees, their Utility Board, their mayors and councils, and their joint police officials are all either sub-parts or servants of the Twin Cities when acting in their municipal capacities will allow the jury to understand whose conduct the Twin Cities must answer for.  It will also prevent the Twin Cities from confusing the jury by trying to improperly insulate the Twin Cities from the conduct of their sub-parts and servants.

**B.      The Councils, Utility and Building Departments, Utility Board and Marshal's Office Were All Sub-Parts of the Twin Cities.**

**(1)   The Councils, Departments, Offices of Other Sub-Parts Carrying Out the Twin Cities' Exclusive Statutory Authorities Were Acting As the Municipalities.**

Arizona and Utah municipalities are statutory creatures.  *See* A.R.S. § 9-101, *et seq.;* *Carter v. Lehi City*, 2012 UT 2, ¶  86 n. 57 269 P.3d 141, 162 n. 57 (Utah 2012)(citing *Provo City v. Ivie*, 2004 UT 30, ¶ 11, 94 P.3d 206 ("'Except for cities which operate under charter and derive their authority from Article XI, Section 5 of the Utah Constitution, the cities of this

---

[3]   *See also Anton v. Industrial Comm'ns*, 141 Ariz. 566, 569, 688 P.2d 192, 195 (App. 1984) ("[T]he finding that petitioner is an independent contract is a conclusion of law.").

State are creatures of statute and limited in powers to those delegated by the legislature.") The Town of Colorado City has adopted a common council/mayor form of government (*JSOF, ¶ 3)* in which "[t]he corporate powers of [the] town" are "vested in [the] common council." A.R.S. § 9-231.  The Town, using the option available to it under A.R.S. § 9-232.03, has chosen to have its mayor appointed by the Town's common council rather than elected by voters.  *JSOF, ¶ 3.*   The mayors and councils of the Twin Cities, as statutorily created arms through whom the municipalities act, are the Twin Cities themselves.  There is no legal separation.

Moreover, the Arizona statutes empower Colorado City to "construct and maintain sewers and drains," "[t]o provide the town with water, to construct public wells, cisterns and reservoirs in the streets and other public and private places within the town, or beyond the limits thereof, and to supply the same with pumps and conducting pipes or ditches," "[t]o establish and regulate the police of the town, to appoint watchmen and policemen, and to remove them, and to prescribe their powers and duties," "[t]o make, amend or repeal all ordinances necessary or proper for the carrying into effect of the powers vested in the corporation, or any department or officer thereof," and "[t]o adopt ordinances for the government of the corporation, its officers and persons within its corporate limits needful for the good government and order of the municipalities . . .."  A.R.S. § 9-240(B)(5(a)), (6), (8), (12), (28(a)), (29).   When the town's council or departments act to carry out these powers they are acting exclusively as the Town of Colorado City because only the Town holds the authority to take such actions and make such decisions.

**(2) The Utility and Building Departments Are Sub-Parts of the Twin Cities.**

Testimony of Jeremiah Barlow, the individual describing himself as the former business manager of the Twin Cities' "power department" and "liaison" or Utility Manager/Business Manager for all the utilities (gas, water and sewer) in the Town confirms that the utility departments of the twin municipalities are not separate entities but are just departments of Colorado City and Hildale. *JSOF, ¶¶ 10-12.* The same goes for the Twin Cities' building department which issue (or refuse to issue where so desired) permits to allow improvements on real property within the municipal limits. *JSOF, ¶¶ 10-12.* The departments are merely arms of the Twin Cities whose wrongful conduct the Twin Cities are directly liable for.

**(3)  The Arizona "Jural Entity" Law Makes the Departments and Offices of Colorado City Integrated Sub-Parts of the Town.**

Governmental bodies in Arizona have only the powers their enabling statutes provide. *See Ricca v. Bojorquez*, 13 Ariz. App. 10, 13, 473 P.2d 812 (App. 1970).  Here, the Town's utility departments have no independent enabling statutes, but were merely created by the Town under the powers enumerated at A.R.S. §§ 9-240(B)(5,6); 9-511; 9-511.01 to help the Town fulfill its statutory responsibilities.   They simply act as the Town itself.

Moreover, where an Arizona municipality has used its powers to create a department the municipality remains the jural entity – the entity who may sue or be sued – and the department is merely considered part of the jural entity for which the municipality is legally accountable. *See Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 885-887 (D. Ariz. 2008) (holding City of Phoenix was jural entity and that "the Phoenix Police Department is a subpart of the City of Phoenix, not a separate entity for purposes of suit.")  As this Court has

recognized, such bodies or offices remain just a sub-part or administrative subdivision of the

jural entity that they assist in carrying out its statutory responsibilities, and they have no legal

existence separate from the jural entity. *Tarantino v. Dupnik*, 2012 U.S. Dist. LEXIS 67557,

*6-7 (D. Ariz. May 14, 2012). Here any conduct of the Town's departments, including its

utility and building departments or its Marshal's Office, is conduct of the Town for which it is

legally accountable.

C.    **The Mayors, Councils, Departments, Municipal Employees, Marshal's Office and the Utility Board Are Also Servants of the Twin Cities.**

The Twin Cities' mayors, council members, utility and building department employees,

Marshal's Office employees and Utility Board also qualify as servants of the Twin Cities

when acting in their municipal capacity for purposes of vicarious liability analysis. As the

U.S. Supreme Court's Fair Housing Act decision in *Meyer* noted, "[i]t is well established that

traditional vicarious liability rules ordinarily make principals or employers vicariously liable

for acts of their agents or employees in the scope of their authority or employment." *Meyer*,

527 U.S. at 285-86 (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998)

("An employer may be liable for both negligent and intentional torts committed by an

employee within the scope of his or her employment")). Arizona law has long embraced these

same principals. *See, e.g., Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 150,

235 P.3d 1030, 1033 (2010); *Driscoll v. Harmon*, 124 Ariz. 15, 16-17, 601 P.2d 1051, 1052-

53 (1979); *Larsen v. Arizona Brewing Co.*, 84 Ariz. 191, 325 P.2d 829 (1958).

Thus, the doctrine of *respondeat superior* applicable here provides that "the act of an

employee during the course of his employment is legally the act of the employer." *Driscoll*,

124 Ariz. at 16, 601 P.2d at 1052 (citing *Larsen v. Arizona Brewing Co.*, 84 Ariz. 191, 325

P.2d 829 (1958)); *see Throop v. F.E. Young & Co.*, 94 Ariz. 146, 150-51, 382 P.2d 560, 562-63 (1963)("The doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees.")  And, the applicable doctrine of principal vicarious liability provides that even an innocent principal is liable for the wrongful acts of its servants where such acts are taken in the course and scope of their agency.  *See Law v. Verde Valley Med. Ctr.*, *217 Ariz. 92, 95-96, 170 P.3d 701, 704-05 (App. 2007)(confirming that A.R.S. § 12-2506(D)(2)* "preserves the vicarious liability of a principal or master for the conduct of an agent or servant."); *Conchin v. El Paso & S. W. R.R.*, *13 Ariz. 259, 261-63,* 108 P. 260, 260-61 (1910) (holding that "[b]efore the master can be held liable for the negligence or wrongful act of his servant, it must appear that the servant was engaged at the time in the performance of the duties of his employment, and if so engaged, and the wrongful act was performed in connection with such duties and in apparent furtherance of their accomplishment, the master will be liable, even though the act be in excess of the authority conferred by him or in violation of his express directions, provided, however, that it is not done in furtherance alone of the personal desires or ends of the servant."); *see also* Restatement (Second) of Agency, § 219(1) ("A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.").

Arizona follows Restatement (Second) of Agency § 220 to define which individuals qualify as a "servant" for vicarious liability.  *See Throop*, 94 Ariz. at 150-152, 382 P.2d at 562-63.  This test provides that "[a] servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."  *Id.*  Thus, an individual subject to

13

the control of another and acting in furtherance of that other party's business qualifies as a servant. *See Mitchell v. City of Flagstaff*, 2011 U.S. Dist. LEXIS 133766, *6-7 (D. Ariz. Nov. 18, 2011).

### (1)  The Mayors, Councils and Municipal Managers.

The discussion above confirms that the mayors and councils of the Twin Cities are statutory creations.    The Twin Cities also employed city managers to help supervise the municipalities' business. *JSOF, ¶¶ 6, 19.* Official actions taken as mayor and council members are inherently taken for furtherance of the municipalities' business. In such capacities, the mayors and council members, as well as the city managers, are, as a matter of law, servants of their towns.

### (2)  Utility and Building Department and Marshal's Office Employees.

The evidence from the record cited above confirms that there is no dispute that the utility and building department employees, as well as the Marshal's Office employees, qualify as servants when working in their municipal positions.  [*See also  JSOF, ¶ 13* (Jeremiah Barlow received his check for utility work from the Town.)]   The utility and building department employees are hired to carry out the municipalities' powers, such as those under A.R.S. § 9-240(B) cited above.   Jeremiah Barlow specifically operated as the Utility Liaison, and then as the Utility Manager/Business manager for various utilities of the municipalities. *JSOF, ¶¶10-14.*   Any individual like Mr. Barlow exercising the Town's statutory authority to supply (or deny) the Town residents water or sewer services, to operate a police force, or to adopt ordinances or policies governing the services provided by the Town must be acting as a part of the Town.

Moreover, the Town's Marshal is one of the "appointive officers" that Arizona statute requires Colorado City to appoint.   A.R.S. § 9-237.   The Marshal's Office employees are hired to carry out the Town's authority under A.R.S. § 9-240(B) (12) and remain, under that statute, strictly under the regulation of the Town's council. The officers considered themselves Town employees [*see JSOF, ¶¶ 15-17*], and as such, they were servants whose wrongful conduct during their work subjects the Town to vicarious liability.  *See Duncan v. State*, 157 Ariz. 56, 61, 754 P.2d 1160, 1165 (App. 1988) (noting that a city was vicariously liable if its police officer was acting within the scope of his employment when he shot and killed another law enforcement trainee).

### (3)  The Town's Utility Board

The Town's Utility Board exists to fulfill contractual obligations from the series of contracts, including an Intergovernmental Agreement ("IGA"), by which Colorado City and Hildale acquired the water delivery systems and facilities within their municipal limits.  *JSOF, ¶¶ 24-25.*  The IGA provided that each city assumed liabilities for actions taken by the Board.  *JSOF, ¶ 33.*   This is not surprising given the Town's total control over and use of the Utility Board to fulfill the Town's powers.

The IGA acknowledges a non-profit entity known as the Twin City Water Authority (the "Authority") whose Board of Trustees is "to constitute the governing water board to oversee maintenance and operation of the water distribution system and facilities being acquired by Colorado City and the water distribution system and facilities being acquired by Hildale pursuant to the [separate] Sales Agreements . . .."  *JSOF, ¶¶ 22-23.*  At all relevant times, the Twin Cities have operated a combined Utility Board to manage all remaining utility

distribution and associated functions.  Jeremiah Barlow operated as the Business Manager for the Twin City Water Authority Board during the relevant time period. *JSOF, ¶ 13*. The Utility Board members are selected by the mayors and councils of the two municipal governments, they report directly to the municipal councils, and "all action of the Board is subject to the power of the Cities' Governing Bodies, separately for each City. *JSOF, ¶¶ 26-27*.  All policies, regulations and resolution actions of the Utility Board are ratified by the twin cities through their municipal councils, including any rate and water conservation policies.  *JSOF ¶ 28*.  Per the governing contractual documents, "water service regulations" issued by the Utility Board had to be pre-approved by the Town's council and Hildale council, including those needed to "[p]rovide quality, consistent service" and those needed to "[p]rovide a method for the fair resolution of disputes between the water system and its respective customers." *JSOF ¶ 29-31*. Thus, the Utility Board members are both subject to the control of the Twin Cities and are acting to further the Twin Cities' business and statutory authorities.

Given the foregoing, the Utility Board, its Business Manager, and its members meet the tests for a servant, and the Board's obligations for ongoing management of the day-to-day operations concerning culinary water delivery within the Town even make the Utility Board a "general agent" of the Twin Cities.  *See* Restatement (Second) of Agency § 3 (defining "general agent" as "an agent authorized to conduct a series of transactions involving a continuity of service.")  General agents are considered, as a matter of law, to be the servant of the municipalities for whose unlawful actions and omissions the municipalities remain vicariously liable.  *See, e.g., Neddo v. State*, *194 Misc. 379, 386, 85 N.Y.S.2d 54, 61* (N.Y. App. Div. 1949) (where contract between state and county provided that state retained control

16

of snow removal and where state officials retained direction and prior approval of schedule of county snow removal operations, sequence of performance and use of men and equipment, county was not an independent contractor, but a servant whose actions gave rise to vicarious liability for state).

The foregoing demonstrates a basis for findings, as a matter of law, that: 1) the town council, utility and building departments, and Marshal's Office of the Town of Colorado City, Arizona ("Colorado City") are sub-parts of Colorado City whose conduct is legally considered the conduct of the town; and 2) the mayors, individual council members, employees of the utility and building departments, employees of the Marshal's Office, and the Utility Board and individual Utility Board members of the "Twin Cities" of Colorado City and the City of Hildale, Utah ("Hildale") are servants of the Twin Cities when acting in their municipal capacities.

**CONCLUSION**

Based on the foregoing, Plaintiffs request that this Court grant summary Judgment as indicated.

WILLIAM G. WALKER P.C.


 s/William G. Walker
William G. Walker
Attorney for Plaintiffs Ronald and Jinjer Cooke

17

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2012, I electronically transmitted the foregoing

document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice

of Electronic filing to the following CM/ECF registrants:

Jeffrey C. Matura, Esq.
Asha Sebastian, Esq.
1850 N. Central Avenue, Suite 500
Phoenix, AZ 85004
Attorneys for Town of Colorado City
jmatura@gbmlawpc.com
asebastian@gbmlaw.com

R. Blake Hamilton, Esq.
215 S. State Street, Suite 750
P. O. Box 810
Salt Lake City, UT 84110
Attorneys for Hildale-Colorado City Utilities (Hildale-Colorado City
Power, Sewer and Gas Department and Twin City Water Authority);
Twin City Power; City of Hildale
bhamilton@stirba.com

Sandra R. Kane, Assistant Attorney General
Civil Rights Division
1275 W. Washington Street
Phoenix, AZ 85007
Attorney for Plaintiff-Intervenor State of Arizona
sandra.kane@azag.gov

Bill Richard, Esq.
Bade Baskin & Richards
80 East Rio Salado Parkway, Suite 511
Tempe, AZ 85281
brichards@bbrplc.com

s/ Sharon L. Barnette
Sharon L. Barnette, CLA

18