WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Cooke and Jinjer Cooke, husband and wife,<br><br>Plaintiffs,<br><br>The State of Arizona *ex rel.* Thomas C. Horne, the Attorney General; and the Civil Rights Division of the Arizona Department of Law,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>Town of Colorado City, Arizona; City of Hildale, Utah, Hildale-Colorado City Utilities; Twin City Water Authority, a Utah non-profit corporation; Twin City Power,<br><br>Defendants. | No. CV 10-08105-PCT-JAT<br><br>**ORDER** |

Pending before the Court are (1) the Town of Colorado City's Motion for Summary Judgment (Doc. 264); (2) the Cooke Plaintiffs' Motion for Partial Summary Judgment (Doc. 266); (3) the City of Hildale, Hildale-Colorado City Utilities, Twin City Power, and Twin City Water Authority's (collectively, the "Hildale Defendants") Motion for Summary Judgment (Doc. 267); and (4) the State of Arizona's Motion for Summary

Judgment (Doc. 269).  The Court now rules on the Motions.[1]

## I.  BACKGROUND[2]

In this case, Plaintiffs allege that Defendants discriminated against Plaintiffs on the basis of religion by denying Plaintiffs utilities for their home because Plaintiffs are not members of the Fundamentalist Church of Jesus Christ of Latter Day Saints ("FLDS").[3]  Plaintiffs also allege that Defendants discriminated against Plaintiff Ronald Cooke due to his disability.

### A.  Relevant History regarding Defendant Town of Colorado City, Arizona and Defendant City of Hildale, Utah and the United Effort Plan Trust

In the 1930s, the leaders of FLDS's predecessor, the Priesthood Work, initiated a settlement on land, which was then known as "Short Creek."[4]  In 1942, leaders of the

---

[1]  Throughout this Order, the Court refers to the Cooke Plaintiffs and Plaintiff-Intervenor collectively as "Plaintiffs" and Defendant Colorado City and the Hildale Defendants collectively as "Defendants."

[2]  For purposes of deciding the motions for summary judgment, the Court has included some facts in the Background section of this Order that are disputed.  Those facts are discussed more fully in the Analysis section of this Order.

[3]  FLDS is a religious organization that vests power in a single President or Prophet.

[4]  Plaintiffs argue that the Court should take judicial notice of certain "facts" in certain opinions issued by the Third Judicial District Court of Utah, the Utah Supreme Court, and the Arizona Court of Appeals.  (Doc. 307 at n. 6).  While the Court can take judicial notice of the existence of those opinions as they are public records, whose accuracy cannot reasonably be questioned, the Court cannot take judicial notice of the facts in those opinions for their truth.  *See, e.g.*, *U.S. v. Ritchie*, 342 F.3d 903, 908 - 909 (9th Cir. 2003) (Pursuant to Federal Rule of Evidence 201(b), "[f]acts are indisputable, and thus subject to judicial notice, only if they are either 'generally known' under Rule 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under Rule 201(b)(2).").

This Court can take notice that other courts stated certain facts, but cannot take judicial notice of the facts themselves.  Nonetheless, at the summary judgment stage, the

settlement created the United Effort Plan Trust ("UEP"), which was established to hold and administer property on behalf of the settlers of Short Creek.  The inhabitants of Short Creek ultimately incorporated their community into the Town of Colorado City, Arizona ("Colorado City" or the "Town of Colorado City") and the City of Hildale, Utah ("Hildale" or the "City of Hildale").  The majority of real property located within the municipal limits of Colorado City and Hildale is owned by the UEP.

At some point thereafter, FLDS was formally founded and FLDS leaders administered the UEP Trust.  In 1986, FLDS leaders declared that people living on UEP land were tenants at will.

In 2004, Warren Steed Jeffs ("Jeffs") took control of the FLDS as its Prophet and President.  Jeffs advocated that his followers eliminate all contact with former-FLDS members, who were deemed "apostates."  Several former-FLDS members brought lawsuits against Jeffs, the FLDS Church, and the UEP Trust in civil actions.

At Jeffs' direction, the UEP trustees refused to defend the UEP Trust in civil lawsuits and, in 2005, the Utah Attorney General filed a lawsuit against the UEP to remove its trustees.  The Utah state court removed the trustees and appointed Bruce Wisan ("Wisan") as the special fiduciary of UEP.  In 2006, the UEP was reformed to eliminate criteria based on religion for receiving benefits from the UEP.  The elimination of these criteria made housing available to all UEP trust participants, whether or not they adhered to the FLDS religion.

---

Court does not focus on the admissibility of the evidence's form and, instead, focuses on the admissibility of its contents. *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.") (internal quotation marks and citation omitted).  Accordingly, the Court assumes, for the purposes of this summary judgment Order that these facts can be presented in an admissible form at trial.

**B.     UEP Trust Land**

When Wisan became Special Fiduciary, the UEP had dozens of unfinished, deteriorating homes in various stages of completion on which all work had been abandoned at the direction of the leaders of the FLDS Church.

Wisan, as Special Fiduciary, then began working on making housing on UEP land available to potential trust participants.  At the same time, Jeffs began speaking out against this new system, claiming that Wisan's intention was to take UEP land away from the Priesthood and give it to "apostates."  Plaintiffs allege that many of Jeffs' followers still reside in Colorado City and the City of Hildale and those members do not believe that non-FLDS members are entitled to the benefits of the UEP trust land.

Under the new system instituted by Wisan, to obtain property on UEP land, an applicant submits a petition for benefits, the UEP reviews the petition and, upon approval, enters into an occupancy agreement with the applicant, giving the applicant the right to occupy the property.

**C.     The Cooke Plaintiffs**

Plaintiff Ronald Cooke ("Mr. Cooke") is a former member of the FLDS church and alleges that he suffers from a severe disability.  Mr. Cooke was born in Colorado City and raised within FLDS.  As a teenager, Mr. Cooke left the FLDS church and moved to Phoenix.  In 2005, Mr. Cooke was hit by a truck while doing road work and suffered injuries resulting in disability.  In early 2008, Mr. Cooke and his wife, Plaintiff Jinjer Cooke, decided to move back to Colorado City.

After deciding to move back to Colorado City, the Cookes submitted a petition for benefits dated February 11, 2008 to UEP.  The UEP Housing Advisory Committee (the "Housing Board") worked with the Cookes to identify a specific property on UEP land for the Cookes.  Mr. Cooke's brother, Seth Cooke, was a member of the Housing Board. The UEP and the Cookes then entered into an Occupancy Agreement for a residence located at 420 East Academy Avenue in Colorado City (the "Academy Avenue Property").

### D.    The Academy Avenue Property

The Academy Avenue Property was only partially constructed and did not have a culinary water connection or other utilities when the Cookes entered into the Occupancy Agreement.  The Academy Avenue Property is within the city limits of Colorado City.  There is a municipal culinary water line running down Academy Avenue in the vicinity of the Academy Avenue property.  Prior to the Utah Court assigning Wisan to the position of Special Fiduciary of the UEP Trust, no occupants of UEP land ever had a problem getting approval for a new water connection in Colorado City.

At some point in 2008, the Cookes submitted applications for water, sewer, and electric service for the Academy Avenue Property.  The Cookes and the UEP anticipated that the Cookes would not have a problem obtaining water connections and other utilities because there was a water line going down the street, other homes on the street received city water service, and Colorado City had previously issued a building permit for the Academy Avenue Property with signoffs from all utility departments.

In October 2008, Ronald Cooke submitted a letter to Colorado City and the Utility Board to request that utilities, including culinary water and electricity be installed at the Academy Avenue Property as quickly as possible due to his disabilities.

### 1.    The Building Permit

On April 9, 2001, Colorado City issued a building permit to a previous occupant of the Academy Avenue Property, Robert Black.  The Building Permit contained signatures from the various utility departments, including water, which indicated that the Academy Avenue Property was entitled to receive water and other utilities.  The Building Permit contained language indicating that it would be "null and void if construction is suspended or abandoned for a period of 180-days at any time after work is commenced."  It is undisputed that, because of this language, the building permit for the Academy Avenue Property had expired by the time the Cookes entered into their Occupancy Agreement for that property.  It is likewise undisputed that this "expiration clause," which was contained in all building permits, was not enforced prior to 2005, in order to

allow occupants of UEP properties to continue to build slowly over time if they could not afford to do all of the building at once.

In November 2008, the Utility Board met and voted to deny Ronald Cooke's request for water service, citing concerns about not being able to supply water to existing customers.  In 2008, the Cookes met with Jeremiah Barlow at the Utility Office and were told that that there was a policy that no new water service connections were being added to the system and, to obtain service at the Academy Avenue Property, physical water would need to be provided to the system by the applicant or property owner.

### 2.     The Water Policy and Requests for Electricity

Defendants claim that the practice of requiring an applicant to bring physical water to the system to receive a new water connection was implemented on or about July 7, 2007.  It is undisputed that this policy was not formally adopted and put into writing until 2010.  Defendants argue that this policy was implemented in July 2007 after a well pump motor burned out and there was concern regarding a water shortage.  The policy allowed unlimited hookups to properties that had a prior water connection without any requirement that they bring physical water to the system.

 Plaintiffs argue that there was never a water shortage and that, as soon as the pump motor was replaced in July 2007, there was no reason for concern about a water shortage, and the requirement that physical water be added to the system was merely a pretext to make it difficult or impossible for non-FLDS members to obtain water connections for UEP trust properties.  Plaintiffs' expert opines that the effect of allowing a water connection for the Academy Avenue Property would increase the demand on the water system by .022% and that the same amount of a water is used whether at a new or existing water connection location.

Further, in December 2009, the Utility Board approved culinary water connections for Twin City Improvement Association, which was building triplexes outside of UEP land for the benefit of FLDS members.  Twin City Improvement Association was not required to bring physical water into the system per the stated policy, but agreed to bring

water rights to the system.  When UEP sought to obtain a similar agreement, it was told to submit its own proposal.

In 2008, Jinjer Cooke applied for electricity service a second time, but no action was taken on her request.  Jeremiah Barlow stated that no action was taken because the address did not match the one on the expired building permit and the Cookes failed to complete a new utilities submittal checklist.  The Cookes argue that a new utilities submittal checklist was unnecessary because no new information could have been added to the original checklist submitted to obtain the expired building permit.

In September 2009, Jinjer Cooke inquired with Colorado City Town Manager David Darger about the procedure for obtaining a building permit for the Academy Avenue Property.  Mr. Darger told Mrs. Cooke that the city fills out the application.  In September 2009, the Cookes learned that Robert Black, the Academy Avenue's previous occupant and an FLDS member, spoke at a Utility Board meeting where he stated that he wanted a building permit for the Academy Avenue Property.  In October 2009, the Cooke Plaintiffs and Seth Cooke attempted to meet with David Darger to fill out a building permit, but were told that he was out of the office and that Freeman Barlow at the City of Hildale could help them.  The Cookes then went to see Freeman Barlow, but he was not there.  The Cookes left a memo and message for Mr. Barlow to contact them.  While at the Hildale Office, the Cookes completed another set of utility applications for the Academy Avenue Property and paid a sewer impact fee, deposits, an inspection fee, and hookup fee.

On October 14, 2009, Jinjer Cooke received a call from Freeman Barlow.  Freeman Barlow told Ms. Cooke that she could not have building permit because Robert Black had "pulled" a permit on the house the prior week.  In fact, on October 13, 2009, Colorado City issued a new building permit to Robert Black.  This permit omitted any space for the signature of the property owner, the UEP.

On February 2, 2010, Mr. Cooke received a letter from Jeremiah Barlow advising Mr. Cooke that his application for wastewater service had been approved on November 1,

2009, but he would need to uncover pipes and request an inspection of the Academy Avenue Property before such service could be used lawfully.

In August 2009, after Garkane Energy became the local electrical power supplier, the Cookes applied to Garkane for electricity at the Academy Avenue Property. It took eight months for Garkane to receive approval from Colorado City for a right-of-way to run an electric power line across a dirt road to serve the Academy Avenue Property. Employees of Garkane Energy stated that, in their general experience, it usually takes a week or two to get approval to run service to a residence and get power and, in their experience with Colorado City, the requirements and restrictions that were imposed in getting service to the Academy Avenue Property were not imposed on other properties seeking such services prior to July 2009.

On May 1, 2010, Robert Black arrived at the Academy Avenue Property, claimed that the property was his, and ordered the Cookes to vacate the property.[5]  On June 2, 2010, Sergeant Barlow of the Hildale-Colorado City Marshals Office entered the Cookes' property without a search warrant and began to dig up the front yard of the Academy Avenue Property with a backhoe, claiming to be checking for theft of irrigation water. There was an apparent dispute between the irrigation company and the UEP over who owned the irrigation water.  Seth Cooke was arrested when he drove his car onto the yard of the Academy Avenue Property to stop the digging.

The Parties dispute the reasons that the Cooke Plaintiffs were unable to obtain water, sewer, and electric service hookups.  Plaintiffs allege that the approval for water, sewer, and electric services is in the control of FLDS members, who do not want non-FLDS members living on UEP Trust land and want to discourage such occupancy by making the property uninhabitable.

---

[5]  Whether Robert Black or the Cookes are the rightful occupiers of the Academy Avenue Property is the subject of another lawsuit.

### 3.      The Utility Departments

Defendant Colorado City, Arizona and the City of Hildale, Utah entered into intergovernmental agreements regarding the operation and management of utilities in the two cities.  It is undisputed that Defendant Colorado City, Arizona and the City of Hildale, Utah share a Utility Board.  Defendant Twin City Water Authority ("TCWA") is a non-profit Utah corporation.  TCWA has a Board of Trustees.  The Utility Board and TCWA's Board of Trustees are separate entities, but the same individuals serve on both Boards.  Pursuant to an Intergovernmental Agreement between the City of Hildale, Colorado City, and TCWA, each entity has "joint, coordinated and cooperative management, operation and maintenance of both cities' water systems."  Jeremiah Barlow is on both Boards and is the Utility Manager.

Twin City Water Works ("TCWW"), a non-profit corporation owns the water rights and supplies all water to the cities' water systems.  Colorado City entered into an agreement with Twin City Water Works to purchase bulk water for its residents, but Colorado City does not own or supply that water.  TCWW brings the water to the system and guarantees a certain volume of water in gallons per minute to Colorado City.

Although the two cities had a Power and Gas Board and a Water Board, the power was sold to a private company, Garkane Energy Cooperative, Inc.  The remaining Utilities Board administers services such as gas and wastewater to residents of the two cities.  Plaintiffs have presented evidence that, when the Utility Board met, it would also consider water business in its operation as TCWA's Board.

### E.      The Complaint

Plaintiffs allege that Defendants denied the Cookes a new culinary water connection and other utilities because the Cookes were not FLDS members and that such denial was in violation of Mr. Cooke's rights pursuant to the Arizona Fair Housing Act and the Federal Fair Housing Act.  Defendants deny these allegations.

The Joint Second Amended Complaint (the "Complaint") filed by the Cooke Plaintiffs and Plaintiff-Intervenor contains ten counts against Defendants.  (Doc. 169).

1   Because Counts One and Two were previously dismissed with prejudice,[6] the individual

2   parties now move for summary judgment on all or some of the remaining Counts

3   contained in the Joint Second Amended Complaint.  Specifically, the Hildale Defendants

4   and Defendant Colorado City move for summary judgment on all eight remaining

5   Counts, the Cooke Plaintiffs move for summary judgment on part of Count Four, and

6   Counts Five, and Ten, and Plaintiff-Intervenor moves for summary judgment on Count

7   Five.   Further, the Hildale Defendants move to dismiss the Hildale-Colorado City

8   Utilities because they are non-jural entities.

9       **II.    LEGAL STANDARD**

10          Summary judgment is appropriate when "the movant shows that there is no

11  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

12  of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely

13  disputed must support that assertion by . . . citing to particular parts of materials in the

14  record, including depositions, documents, electronically stored information, affidavits, or

15  declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by

16  "showing that materials cited do not establish the absence or presence of a genuine

17  dispute, or that an adverse party cannot produce admissible evidence to support the fact."

18  *Id.* at 56(c)(1)(A)&(B).  Thus, summary judgment is mandated "against a party who fails

19  to make a showing sufficient to establish the existence of an element essential to that

20  party's case, and on which that party will bear the burden of proof at trial."  *Celotex*

21  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

22          Initially, the movant bears the burden of pointing out to the Court the basis for the

23

24  _____

25          [6]   The Court notes that Counts One and Two were dismissed with prejudice
    pursuant to a stipulation by the Parties prior to the filing of the Joint Second Amended
26  Complaint.  (*See* Doc. 110 and Doc. 111).  It is not clear to the Court why Plaintiffs re-
    alleged these previously dismissed Counts in their Joint Second Amended Complaint.
27  However, Counts One and Two have been dismissed with prejudice and the Court will
    accordingly only address Counts Three through Ten in this Order.
28

motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## III.   ANALYSIS

### A.   Dismissal of the Hildale-Colorado City Utilities

In a footnote, in their Motion for Summary Judgment, the Hildale Defendants move to dismiss the Hildale-Colorado City Utilities, "because *it* is a non-jural entity." (Doc. 267 n.1) (emphasis added). The Hildale Defendants then argue that "Hildale-Colorado City Utilities are a department of Defendants Hildale and Colorado City" and have not been provided with the authority of the legislature to sue and be sued. (*Id.*). Thereafter, in their Response to Plaintiffs' Motion for Summary Judgment, the Hildale Defendants state "Hildale Defendants have already acknowledged in their Motion for Summary Judgment that Hildale-Colorado City Utilities are departments of the municipalities and therefore are non-jural entities. To be clear, however, [Twin City Water Authority] and [Twin City Power] are, in fact, jural entities capable of suing and being sued." (Doc. 282 at 2). Unfortunately, these arguments are anything but clear and are internally inconsistent.

In the Joint Second Amended Complaint, Plaintiffs define Defendant "Hildale-Colorado City Utilities" as consisting of "the Hildale-Colorado City Power, Water, Sewer, and Gas Department, and Defendant [Twin City Water Authority]" (Doc. 169).

1    Accordingly, by stating that Defendant "Hildale Colorado City Utilities" is a non-jural
2    entity, the Hildale Defendants have argued that the Twin City Water Authority is both a
3    jural entity and a non-jural entity.  Further, the Hildale Defendants have failed to apply
4    the proper test in determining whether an entity is a jural entity for each individual entity
5    encompassed in the definition of the "Hildale-Colorado City Utilities" as defined in the
6    Second Joint Amended Complaint.   *See Braillard v. Maricopa County*, 232 P.3d 1263,
7    1269 (Ariz. Ct. App. 2010) (holding that "Governmental entities have no inherent power
8    and possess only those powers and duties delegated to them by their enabling statutes.").

9    Because this issue has not been properly briefed and/or argued, the Court will not
10   address the jural entity question at this time and the Hildale Defendants' request to
11   dismiss the Hildale-Colorado City Utilities as non-jural entities in the Hildale
12   Defendants' Motion for Summary Judgment is denied without prejudice.

13                    **B.      Vicarious Liability of all Defendants**

14   The Cooke Plaintiffs and Plaintiff-Intervenor (collectively, "Plaintiffs") move for
15   a summary judgment ruling that (1) the town council, utility and building departments,
16   and Marshal's Office of the Town of Colorado City are sub-parts of Colorado City whose
17   conduct is legally considered conduct of the town and (2) that the mayors, individual
18   council members, employees of the utility and building departments, employees of the
19   Marshal's Office, and the Utility Board and individual Utility Board members of
20   Colorado City and the City of Hildale are servants of Colorado City and the City of
21   Hildale when acting in their municipal capacities.  Plaintiffs argue that "answering such
22   legal questions now will simplify and clarify issues for the jury." (Doc. 266 at 9).

23   Plaintiffs argue that they are entitled to such a ruling because municipalities are
24   liable for violations they commit under the Federal Fair Housing Act and vicarious
25   liability has been found under respondeat superior standards for claims under the Federal
26   Fair Housing Act.  Plaintiffs further argue that, because the Arizona Fair Housing Act
27   parallels the Federal Fair Housing Act, the same standards of vicarious liability apply.
28   Defendants do not dispute these legal conclusions.

Plaintiffs then make a lengthy and broad legal argument regarding agency and vicarious liability law, which they argue compels findings from the Court that (1) the town council, utility and building departments, and Marshal's Office of the Town of Colorado City are sub-parts of Colorado City whose conduct is legally considered conduct of the town and (2) that the mayors, individual council members, employees of the utility and building departments, employees of the Marshal's Office, and the Utility Board and individual Utility Board members of Colorado City and the City of Hildale are servants of Colorado City and the City of Hildale when acting in their municipal capacities.

In Response, Defendants first argue that Plaintiffs improperly treat the Town of Colorado City, Arizona and the City of Hildale, Utah as if they were one entity without explaining the legal or factual basis for treating them as one entity. Defendants further argue that Plaintiffs' request that the Court enter "a blanket order that Colorado City [and the City of Hildale] are per se vicariously liable for all the conduct of [their] town council, utility and building departments, and Marshal's Office, as well as for all the conduct of every individual who has ever served as [their] mayor, on a town council, as an employee of the utility and building departments, or as an employee of the Marshals' Office" is overly broad, premature, ignores the possibility of common law defenses to vicarious liability, and fails to specify exactly which entity may be liable for any specific person's or other entity's conduct. The Court agrees.

First, Plaintiffs' request for a "summary judgment" appears, in part, to seek that the Court confirm Plaintiffs' understanding of the law regarding vicarious liability and confirm that the Court will instruct the jury on Plaintiffs' understanding of that law. In fact, in Plaintiffs' Reply in Support of their Motion for Summary Judgment, Plaintiffs state that "Plaintiffs simply ask the Court to affirm that the official municipal actions of Colorado City's council, departments, and Marshal's Office are the actions of Colorado City for liability purposes. The Plaintiffs do not seek a ruling holding the Twin Cities accountable for every action ever taken by someone who may have been associated with

them." (Doc. 301 at 8). Likewise, in Reply, Plaintiffs argue that the second part of their request "merely affirms that the established master-servant and principal-agent liability rules apply to the types of municipal servants involved in this case." (Doc. 301 at 8-9). Plaintiffs' characterization of its requested summary judgment ruling appears to be a premature request for the Court to confirm that it will give specific jury instructions, which the Court declines to do in deciding whether summary judgment is appropriate.

Second, to the extent that Plaintiffs are not simply prematurely requesting jury instructions, and actually seek that the Court enter the requested "judgment," as proposed by Plaintiffs, such proposed judgment is overly broad, as it fails to identify specific individuals or entities that may or may not be liable for any other specific individuals' or entities' conduct, the scope of such liability, ignores defenses to such liability, and is premature based on the evidence in the summary judgment motions that Plaintiffs have presented to the Court.

Accordingly, Plaintiffs have failed to meet their burden of establishing that there are no genuine disputed issues of material fact regarding vicarious liability that would allow the Court to enter a summary judgment that (1) the town council, utility and building departments, and Marshal's Office of the Town of Colorado City are sub-parts of Colorado City whose conduct is legally considered conduct of the town and (2) that the mayors, individual council members, employees of the utility and building departments, employees of the Marshal's Office, and the Utility Board and individual Utility Board members of Colorado City and the City of Hildale are servants of Colorado City and the City of Hildale when acting in their municipal capacities.

Based on the foregoing, Plaintiffs' Motion for Summary Judgment is denied to the extent that it requests that the Court find vicarious liability on behalf of the Town of Colorado City and the City of Hildale for the unspecified conduct of various individuals and entities as discussed herein. To the extent that Plaintiffs are seeking specific jury instructions, Plaintiffs may re-raise those issues when the Court instructs the Parties to submit proposed jury instructions.

## C.    Count Three

Defendant Colorado City and the Hildale Defendants claim they are entitled to summary judgment on Count Three of the Joint Second Amended Complaint.  In Count Three, the Cooke Plaintiffs allege a 42 U.S.C. section 1983 ("section 1983") claim based on unlawful discrimination against all Defendants.  Defendants argue that Count Three fails because (1) a 42 U.S.C. section 1983 claim is foreclosed because 42 U.S.C. sections 3604 and 3617 provide Plaintiffs' exclusive remedy and (2) if Plaintiffs intended to assert a Fourteenth Amendment equal protection violation pursuant to 42 U.S.C. section 1983, no evidence supports such claim.

In Response, Plaintiffs argue that they should be permitted to pursue a 42 U.S.C. section 1983 claim as well as their claims pursuant to 42 U.S.C. sections 3604 and 3617 alleged in Count Four.  Plaintiffs also argue that they have shown that there is a disputed issue of fact regarding direct evidence of discriminatory intent of the Town of Colorado City and the City of Hildale.

In order to determine whether Plaintiffs' section 1983 claim is foreclosed because the Fair Housing Act provides Plaintiffs their exclusive remedy or whether Plaintiffs have demonstrated a disputed issue of fact that would allow their section 1983 to survive, the Court must first determine which of Plaintiffs' "rights, privileges, or immunities secured by the Constitution and laws" have allegedly been violated.  *See* 42 U.S.C.A. § 1983.[7]

---

[7]  The full text of 42 U.S.C. section 1983 is:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

Unfortunately, the Court has been unable to determine the basis for Plaintiffs' section 1983 claim.  Defendants have hypothesized that Plaintiffs' section 1983 claim may be based on the rights secured by 42 U.S.C. sections 3604 and 3617 or the Equal Protection Clause of the Fourteenth Amendment, but admit that they do not know the basis of Plaintiffs' section 1983 claims.  *See* Doc. 267 at 5 (When moving for summary judgment on Count Three of  the Complaint, the Hildale Defendants state: (1) "Based upon the Cookes' claims and allegations regarding the FHA *in Count Four***,** the Hildale Defendants *assume* the Cookes allege violations of the FHA to pursue their relief under § 1983" and "To the extent the Hildale Defendants *can understand* and respond to [the allegations in Count Three], the Cookes *seem* to be asserting violations of the Equal Protection Clause of the Fourteenth Amendment based on their religion (or lack thereof) and disabilities."[8]) (emphasis added).  Having reviewed the Complaint and Plaintiffs' Response to Defendants' Motions for Summary Judgment, the Court cannot ascertain whether Defendants' *assumptions* as to the basis of Plaintiffs' claims are correct.  While Plaintiffs do not appear to dispute Defendants' assumptions as to what their 1983 claim is based on, they also do not provide any clarification or explanation to the Court as to the basis of such claim.   For instance, Plaintiffs never use the terms "Fourteenth Amendment" or "equal protection" in their Complaint or in their Response to Defendants' Motion for Summary Judgment.

Nonetheless, the Parties appear to expect the Court to assume that Plaintiffs

---

> injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. §1983.

[8] Defendant Colorado City likewise hypothesizes that Plaintiffs' section 1983 claims are either based on alleged Fair Housing Act violations or a an alleged Fourteenth Amendment equal protection violation.  (Doc. 264 at 5-7).

intended to state a section 1983 claim based on a violation of their Fourteenth Amendment rights and decide based on the "facts" [9] cited by the Parties whether there is a disputed issue of material fact.  Thus, this Court is expected to invent Plaintiffs' legal theory behind its section 1983 claim out of whole cloth, by applying some facts cited by Plaintiffs, which are substantially unsupported by citations to any statement of facts, to apply those facts to a legal standard, never cited or referred to by Plaintiffs, and decide whether there is a disputed issue of fact based on this legal theory thought up by the Court.

This the Court cannot do.  *See Pliler v. Ford,* 542 U.S. 225, 231, (2004) (wherein

---

[9] To complicate an already convoluted issue, Plaintiffs repeatedly violated Federal Rule of Civil Procedure 56(c) and LRCiv 56.1(e) in their Response to Defendants' Motion for Summary Judgment by failing to cite to specific paragraphs in the statement of facts to support the assertions made on which they rely in opposition to Defendants' Motion for Summary Judgment.  For instance, with regard to their opposition to Count Three, Plaintiffs make numerous arguments based on evidence that is allegedly in the Record, but fail to cite to the statement of facts or any other document, which supports their argument.  For example, Plaintiffs state that 109 water connections were hooked up during and after the time period the Cookes were denied water.  However, Plaintiffs fail to point to any statement of fact or evidence supporting this statement.  While Plaintiffs may believe that they have somehow supported this statement in one of the *21* documents submitted to this Court in connection with the Parties' cross-motions for summary judgment, Rule 56(c) requires a party to support each of its factual assertions with citations to the record instead of relying on the Court to find support for its arguments. *See Orr v. Bank of America,* 285 F.3d 764, 775 (9th Cir. 2002) (internal quotation omitted) ("Judges need not paw over the files without assistance from the parties.")); *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.'") (citation omitted).  Further Plaintiffs have prejudiced Defendants by failing to cite to specific portions of the Statement of Facts because Defendants cannot agree with or dispute a fact if they do not know the evidence that Plaintiffs believe supports the fact.

Nonetheless, the Court has attempted to determine the basis for Plaintiffs' factual statements made without any citation to the Record.  However, to the extent the Court determined that the statement could not be supported due to Plaintiffs' failure to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court, the Court has considered Defendants' facts undisputed for purposes of the Motions.  *See* Fed. R. Civ. P. 56(e)(2).

the Supreme Court instructed that it is inappropriate for courts to give parties advice because advice undermines the district judge's role as an impartial decision maker).  As such, the Court cannot see how guessing what Plaintiffs' legal theories are, and then applying facts (many that do not have citation to the Record) to such guesses to determine whether there is a disputed issue of material fact could be anything other than legal advice.  Such conduct by the Judge may actually constitute acting in the role of Plaintiffs' attorney.

As Defendants theorize, it appears that the Cooke Plaintiffs' section 1983 claim could be based on Defendants' alleged violations of 42 U.S.C. section 3604 or 3617, although those sections are never mentioned in Count Three of the Complaint or in Plaintiffs' opposition to granting summary judgment on Count Three.  It likewise appears that Plaintiffs' section 1983 claim could be based on a Fourteenth Amendment equal protection violation, although Plaintiffs never mention the Fourteenth Amendment or equal protection in their Complaint or in their opposition to granting summary judgment on Count Three.  In Count Three of their Complaint, Plaintiffs simply state "Defendants have engaged in, and continue to engage in a policy, pattern and practice of discrimination against non-FLDS affiliated residents of Colorado City, including the Cookes, due to Plaintiffs' lack of religious affiliation with FLDS and because of Cooke's disabilities, *in violation of* 42 U.S.C. §1983."  (Doc. 169 at 23) (emphasis added).

However, there is no independent legal action for a violation of 42 U.S.C. section 1983.  Such action must be premised on some deprivation of rights, privileges, or immunities secured by the Constitution and laws.  The Court will not speculate which rights, privileges, or immunities secured by the Constitution and/or laws Plaintiffs believe Defendants may have infringed that could constitute a cause of action under section 1983.

Moreover, it is not clear to the Court why Defendants chose to "guess" at the basis of the claim in Count Three rather than either move to dismiss or ascertain the basis of those claims through the discovery process.  Likewise, it is not clear to the Court why the Cooke Plaintiffs did not argue, clarify, or otherwise explain the nature of those claims in

1   response to Defendants' Motion for Summary Judgment on those claims.   As such,

2   Plaintiffs have failed to establish that there is a disputed issue of material fact regarding

3   their section 1983 claim.

4        Accordingly, Defendants' Motions for Summary Judgment on Count Three are

5   granted.

6             **D.**       **Counts Four Through Eight**

7        Count Four alleges various violations of the Federal Fair Housing Act.   Counts

8   Five through Eight allege individual violations of the Arizona Fair Housing Act.[10]   The

9   Parties agree that certain provisions of the Federal Fair Housing Act and certain

10  provisions of the Arizona Fair Housing Act are substantially equivalent and can be

11  analyzed and decided together for purposes of summary judgment.   Accordingly, for

12  organizational purposes, rather than analyzing whether summary judgment can be

13  granted on Counts Four through Eight, the Court will analyze whether summary

14  judgment can be granted regarding particular claims contained in Counts Four through

15  Eight.   Further, if those claims are substantially equivalent under the Federal Fair

16  Housing Act and the Arizona Fair Housing Act such that the Parties have agreed they

17  should be analyzed and decided together, those claims will be discussed in one section,

18  although they are alleged in separate counts of the Complaint.[11]

19  

20      [10]   In a footnote to their Motion for Summary Judgment, the Hildale Defendants

21  argue that Counts Five through Eight should be dismissed against Defendant City of

    Hildale because "[a]s a Utah municipality the Arizona Fair Housing Act does not apply to

22  Hildale and thus [Counts Five through Eight] must be dismissed" against Defendant City

    of Hildale.  (Doc. 267 n. 34).  Defendants fail to cite to any law or to state any reasoning

23  to support their argument.  If Defendant City of Hildale violated the Arizona Fair

24  Housing Act with regard to Arizona housing, the Court can see no reason (and

    Defendants have not provided any reason) why the City of Hildale would not be liable for

25  violations of the Arizona Fair Housing Act.  Accordingly, the Hildale Defendants'

26  request to dismiss the City of Hildale from Counts Five through Eight because the

    Arizona Fair Housing Act does not apply to the City of Hildale is denied.

27  

28      [11]   The Court notes that the Cooke Plaintiffs' generally claim that they are moving

    for summary judgment on "Count Four" of their Complaint, without specifying the

1

### 1.    42 U.S.C. section 3604(a) (part of Count 4) and Arizona Revised Statutes section 41-1491.14(A) (Count 7)

2

3       Defendant Colorado City and the Hildale Defendants claim they are entitled to

4   summary judgment on Count Four of the Joint Second Amended Complaint.  In Count

5   Four, the Cooke Plaintiffs allege that all Defendants, with the intent of denying equal

6   housing opportunities to Plaintiffs, allegedly made unavailable dwellings to persons

7   because of religion in violation of 42 U.S.C. § 3604(a).

8       42 U.S.C. 3604(a) provides,

9
            As made applicable by section 3603 of this title and except as
10          exempted by sections 3603(b) and 3607 of this title, it shall
            be unlawful--
11          **(a)** To refuse to sell or rent after the making of a bona fide
12          offer, or to refuse to negotiate for the sale or rental of, or
            otherwise make unavailable or deny, a dwelling to any person
13          because of race, color, religion, sex, familial status, or
            national origin.
14

15   42 U.S.C.A. § 3604(a).

16       Further, Defendant Colorado City and the Hildale Defendants claim they are

17   entitled to summary judgment on Count Seven of the Joint Second Amended Complaint.

18   In Count Seven, the Cooke Plaintiffs and Plaintiff-Intervenor allege a claim of unlawful

19   _____

20   claim(s) within Count Four on which they believe they are entitled to summary judgment.
     Having read all of the briefing on the Motions for Summary Judgment, the Court
21   concludes that the Cooke Plaintiffs only intended to move for summary judgment on the
     claim in Count Four that alleges that all Defendants, with the intent of denying equal
22   housing opportunities to Plaintiffs, allegedly discriminated on the basis of disability in
     connection with the sale or rental of a dwelling by refusing to make a reasonable
23   accommodation in violation of 42 U.S.C. § 3604(f).  Accordingly, the Court treats the
     Cooke Plaintiffs' Motion for Summary Judgment on Count Four as only referring to their
24   42 U.S.C. § 3604(f) claim.  To the extent the Cooke Plaintiffs did intend to move for
25   summary judgment on the remaining claims alleged in Count Four of their Complaint,
     such motion is denied for the procedural reason that Plaintiffs have failed to carry their
26   burden of demonstrating an entitlement to summary judgment on the remaining claims in
     Count Four (by failing to include any briefing regarding summary judgment on any of
27   those remaining claims).
28

discrimination in violation of Arizona Revised Statutes section 41-1491.14(A) against all Defendants.  Pursuant to Arizona Revised Statutes section 41-1491.14(A),

> A. A person may not refuse to sell or rent after a bona fide offer has been made or refuse to negotiate for the sale or rental of or otherwise make unavailable or deny a dwelling to any person because of race, color, religion, sex, familial status or national origin.

Ariz. Rev. Stat. § 41-1491.14(A).

Defendants argue that they are entitled to summary judgment on these claims because the language in 42 U.S.C.A. § 3604(a) and Arizona Revised Statutes section 41-1491.14(A) refers solely to the availability of the housing and not the habitability of the housing, and thus the denial of utility services cannot affect the availability of the Cooke's housing.  Defendants further argue that it was the UEP, as managed by Wisan, and not Defendants that determined whether the Cookes were entitled to housing and that UEP, in fact, made housing available to the Cookes.  Defendants argue that Defendants were never in a position to make housing available to the Cookes and that failure to provide the Cookes with a new culinary water connection does not impact the "availability" of the residence as required to state a claim under 42 U.S.C.A. § 3604(a) and Arizona Revised Statutes section 41-1491.14(A).  Defendants argue that a claim for denial of services is properly brought under 42 U.S.C. section 3604(b) and 41-1491.14(B) because those sections directly address discrimination in the provision of services.

In Response, Plaintiffs argue that denial of basic utilities can constitute denial of housing in violation of 42 U.S.C. section 3604(a) and Arizona Revised Statutes section 41-1491.14(A).  Plaintiffs cite the Arizona Administrative Code Rule10-2-104(b)(4) as providing that the Arizona Attorney General has interpreted the Arizona Fair Housing Act sections 41-1491.14(A) and (B) as prohibiting the denial of municipal services because of religion and as prohibiting the provision of services differently because of religion.  Plaintiffs argue that this Court should accord considerable weight to the Arizona Attorney General's interpretation and find that Arizona Revised Statutes section

41-1491.14(A) and 42 U.S.C. section 3604(a) apply to the discriminatory provision of services in that such discrimination makes the housing "unavailable" as defined in those statutes.

The Parties agree that the Ninth Circuit Court of Appeals has not addressed the scope of the word "availability" in 42 U.S.C. section 3604(a) and Arizona Revised Statutes section 41-1491.14(A).   Further, both Plaintiffs and Defendants have a reasonable basis for their arguments.   Plaintiffs are correct that there are certainly circumstances where the denial of the provision of services, such as water and utility services, could make the dwelling unavailable within the meaning of 42 U.S.C. section 3604(a) and Arizona Revised Statutes section 41-1491.14(A).  For instance, if the City or other entity required a permit that residences be habitable before it allowed occupancy of those residences, the denial of services could render a home unavailable within the meaning of 42 U.S.C. section 3604(a) and Arizona Revised Statutes section 41-1491.14(A).

On the other hand, where, as here, there is no evidence that the Academy Avenue Property was unavailable to Plaintiffs, but rather, evidence that the home was made less habitable and/or that Defendants otherwise interfered with Plaintiffs enjoyment of the residence because of discrimination in the provision of services, Plaintiffs can state a claim under other sections of the Federal Fair Housing Act and Arizona Fair Housing Act, such as 42 U.S.C. section 3604(b) and Arizona Revised Statutes section 41-1491.14(B), but have provided no evidence that the Academy Avenue Property was actually made unavailable to Plaintiffs by any Defendant within the meaning of 42 U.S.C. section 3604(a) and Arizona Revised Statutes section 41-1491.14(A).  *See Cox v. City of Dallas*, 430 F.3d 734, 740 (5th Cir. 2005) (finding that allegations that City failed to enjoin illegal dumping on land near Plaintiffs' residences due to racial discrimination did not state a claim under 42 U.S.C. section 3604(a) because "[t]he failure of the City to police the Deepwood landfill may have harmed the housing market, decreased home values, or adversely impacted homeowners' 'intangible interests,' but such results do not

- 22 -

make dwellings 'unavailable' within the meaning of [section 3604(a)]").

Accordingly, because Plaintiffs have provided no evidence that the Academy Avenue Property was unavailable to them within the meaning of 42 U.S.C. section 3604(a) and Arizona Revised Statutes section 41-1491.14(A), Defendant Colorado City and the Hildale Defendants' Motion for Summary Judgment is granted on the 42 U.S.C. 3604(a) claim in Count Four of Plaintiffs' Complaint and on Count Seven of Plaintiffs' Complaint.

### 2.   42 U.S.C. section 3604(b) (part of Count 4) and Arizona Revised Statutes section 41-1491.14(B) (Count 6)

Defendant Colorado City and the Hildale Defendants claim they are entitled to summary judgment on the 42 U.S.C. section 3604(b) claim in Count Four of the Joint Second Amended Complaint.  In Count Four, the Cooke Plaintiffs allege that all Defendants, with the intent of denying equal housing opportunities to Plaintiffs allegedly discriminated on the basis of religion in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of a dwelling in violation of 42 U.S.C. § 3604(b).

42 U.S.C. section 3604(b) provides,

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful--
> . . .
> **(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).

Defendant Colorado City and the Hildale Defendants claim they are entitled to summary judgment on Count Six of the Joint Second Amended Complaint.  In Count Six, the Cooke Plaintiffs and Plaintiff-Intervenor allege a claim of unlawful discrimination in violation of Arizona Revised Statutes section 41-1491.14(B) against all Defendants.

Pursuant to Arizona Revised Statutes section 41-1491.14(B),

> **B.** A person may not discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in providing services or facilities in connection with the sale or rental, because of race, color, religion, sex, familial status or national origin.

Ariz. Rev. Stat. § 41-1491.14 (B).

The Cooke Plaintiffs allege that Defendants refused and/or delayed providing utility services to the Cookes, including water, electricity, and sewer because the Cookes were non-FLDS members in violation of 42 U.S.C. section 3604(b) and Arizona Revised Statutes section 41-1491.14(B).

To establish a prima facie disparate treatment claim under the Fair Housing Act, Plaintiffs must establish that (1) the Cooke Plaintiffs were members of a protected class, (2) the Cooke Plaintiffs applied for water, electricity, and sewer connections and were qualified to receive them, (3) water, electricity, and sewer connections were denied despite the fact that the Cooke Plaintiffs were qualified to receive them, and (4) Defendants approved water, electricity, and sewer connections for a similarly situated party during the time period relatively near when the Cooke Plaintiffs were denied their sewer connection. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008) (internal citation omitted).

"In lieu of satisfying the elements of a prima facie case, a plaintiff may also 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the challenged decision." *Id.* (internal citation omitted). "The burden then shifts to the defendant to articulate 'a legitimate nondiscriminatory reason for its action." *Id* (internal citation omitted). "The plaintiff must then prove by a preponderance of the evidence that the defendant's asserted reason is a pretext for discrimination." *Id.* (internal citation omitted).

Plaintiffs argue that they have produced direct and circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated Defendants' decisions to deny the Cooke Plaintiffs water, electricity, and sewer connections. Plaintiffs argue that they have produced enough evidence regarding the history of the Colorado City and the City of Hildale, and have shown enough direct and circumstantial evidence surrounding the decisions to deny the Cookes water, electricity, and sewer connections to establish that a discriminatory reason more likely than not motivated the decision to deny the Cookes water, electricity and sewer connections.

Specifically, Plaintiffs argue that, among other evidence, the following circumstantial evidence makes the requisite showing: the deliberate concealment of water resources, the changed practice regarding the expiration of building permits, the deviations from the alleged policy and different treatment of Twin City Improvement Association, the different treatment accorded to existing water connections as opposed to new water service connections, the FLDS historical treatment of apostates, the temporal proximity between the water shortage policy and the appointment of Wisan as the Special Fiduciary to the UEP Trust, and the similar treatment of other non-FLDS individuals. Plaintiffs argue that this evidence shows that a discriminatory reason more likely than not motivated the decision to deny the Cooke Plaintiffs water, electricity and sewer connections. The Court agrees. Plaintiffs have met their burden of showing that the Cookes were likely denied water, electricity, and sewer connections because they were not FLDS members for purposes of surviving summary judgment.

Defendants argue that they have articulated legitimate, non-discriminatory reasons for denying the Cookes a new water connection, namely that there was a water shortage[12] and, after a well-pump motor burned out, a policy of not allowing new water connections to burden the system was implemented. The Court agrees that Defendants have

_____

[12]   Plaintiffs dispute the existence of an actual water shortage. However, the Court assumes that there was a water shortage for the purposes of this Order.

articulated legitimate, non-discriminatory reasons for denying the Cookes a new water connection.

Plaintiffs argue that they have shown that a preponderance of the evidence suggests that Defendants' legitimate, non-discriminatory reasons were pre-textual. The Court agrees. Defendants rely on a policy that was apparently implemented shortly after Wisan was appointed as the Special Fiduciary for UEP. Although this policy was unwritten and not formally adopted, it was used as an excuse to deny the Cooke Plaintiffs water. Although the policy was based on an alleged water shortage that was discovered when a well-pump was replaced, the policy only placed additional requirements on individuals who needed new water connections and placed no requirements on individuals who needed re-connection of existing water lines.

Plaintiffs have presented evidence that the differentiation between requiring individuals who needed new water connections to bring physical water to the system and not requiring individuals who needed to reconnect to the water is likely to adversely affect UEP land because, when that land was abandoned by a number of Jeffs' followers, dozens of homes on it were left unfinished and in various stages of completion. Plaintiffs have presented evidence that a new water connection did not place any more burden on the system than a reconnection. Further, Plaintiffs have presented evidence that Defendants deviated from this policy for the benefit of Twin City Improvement Association, who was building outside UEP land for the benefit of FLDS members, by allowing Twin City Improvement Association to obtain water in exchange for "water rights," rather than physical water.

Based on this evidence, Plaintiffs have shown that a preponderance of the evidence suggests that Defendants' legitimate, non-discriminatory reason was pre-textual and is sufficient to create a disputed issue of fact for the jury on this claim.

Accordingly, Defendants' Motions for Summary Judgment on the 42 U.S.C. section 3604(b) in Count 4 and Count 6 are denied.

### 3.    42 U.S.C. section 3604(f) (part of Count 4) and Arizona Revised Statutes section 41-1491.19 (Count 5)

The Cooke Plaintiffs, Defendant Colorado City, and the Hildale Defendants claim they are entitled to summary judgment on Count Four of the Joint Second Amended Complaint.  In Count Four, the Cooke Plaintiffs allege that all Defendants, with the intent of denying equal housing opportunities to Plaintiffs, allegedly discriminated on the basis of disability in connection with the sale or rental of a dwelling by refusing to make a reasonable accommodation in violation of 42 U.S.C. § 3604(f).

42 U.S.C. section 3604(f) provides in relevant part,

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful--
> . . .
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.
> (3) For purposes of this subsection, discrimination includes--
> . . .
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or
> . . .

42 U.S.C.A. § 3604(f)(2)(A)-(C)&(3)(B).

The Cooke Plaintiffs, Plaintiff-Intervenor, Defendant Colorado City, and the Hildale Defendants claim they are entitled to summary judgment on Count Five of the Joint Second Amended Complaint.  In Count Five, the Cooke Plaintiffs and Plaintiff-Intervenor allege a claim of unlawful discrimination in violation of Arizona Revised Statutes section 41-1491.19 against all Defendants.  Arizona Revised Statutes section 41-

1491.19 provides, in relevant part,

> B. A person may not discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of:
> 1. That person.
> . . .
> E. For the purposes of this section, "discrimination" includes:
> . . .
> 2. A refusal to make reasonable accommodations in rules, policies, practices or services if the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling.
> . . .

Ariz. Rev. Stat. § 41-1491.19(B)(1) & (E)(2).

The Court notes at the outset that, in response to Defendants' Motions for Summary Judgment on Count 5, Plaintiffs only refer to Defendants' denial of a culinary water connection to the Cooke Plaintiffs and do not address Defendants' denial or delay in providing other utility services to the Cookes based on disability discrimination. Accordingly, Defendants' Motions for Summary Judgment on the 42 U.S.C. section 3604(f) claim in Count 4 and Count 5 are granted in part—to the extent those Counts refer to Defendants' denial of any utility except the culinary water connection.

The Parties agree that, to demonstrate a violation of these provisions in the Federal Fair Housing Act and Arizona's Fair Housing Act, Plaintiffs must show: (1) that the Ronald Cooke is disabled; (2) that Defendants knew or should reasonably be expected to know of Mr. Cooke's disability; (3) that accommodation of the disability may be necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) Defendants refused to make the requested accommodation. *See DuBois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Here, Plaintiffs argue that the requested reasonable accommodation was that Defendants provide Mr. Cooke culinary water. Defendants argue that the requested

accommodation was that Defendants waive the requirement in their policy of requiring an applicant for culinary water service to bring physical water to the system due to his disability.

Because it is undisputed that Defendants told the Cookes that they would need to bring physical water to the system to obtain a culinary water connection and the Cookes have presented no evidence that they would have been denied a culinary water connection if they had brought physical water to the system, the Court assumes for the purposes of analyzing this Count that the requested reasonable accommodation was that Defendants waive the physical water requirement in their policy.

Although Plaintiffs argue that they could not bring physical water to the system because they did not know the amount of physical water that Defendants required they bring to the system, Plaintiffs have not presented any evidence that Defendants refused to provide them with such information or otherwise obstructed Plaintiffs' efforts to comply with the stated policy. Rather, the Cooke Plaintiffs argue that they informed Defendants that, because Mr. Cooke was disabled, they needed a culinary water connection. But this request only demonstrates that Plaintiffs believed that they should not be required to comply with the stated policy because of Mr. Cooke's disability, not that the requested accommodation was actually a culinary water connection.

Defendants argue that Plaintiffs have failed to present any evidence that (1) the accommodation was reasonable and (2) that the accommodation was necessary to afford Mr. Cooke an equal opportunity to use and enjoy the dwelling. With regard to necessity, Defendants argue that Plaintiffs need to establish a causal link between the requested accommodation and Mr. Cooke's disability. Indeed, to show that an accommodation is necessary, Plaintiffs "must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *U.S. v. California Mobile Home Park Management Co.*, 107 F.3d 1374, 1390 (9th Cir. 1997) (quoting *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996).

Defendants argue that, because Plaintiffs have failed to show that Mr. Cooke's

disability prevented him from bringing physical water to the system, they have failed to establish a causal link between Mr. Cooke's disability and the requested accommodation, such that the requested accommodation was necessary because of Mr. Cooke's disability. The Court agrees.

Plaintiffs have failed to present evidence that Mr. Cooke's disability prevented him from bringing physical water to the system.  There is no evidence that if Mr. Cooke brought physical water to the system, he would have been denied a culinary water connection.  Accordingly, Plaintiffs have failed to establish that but for the requirement that he bring physical water to the system, Mr. Cooke likely would be denied an equal opportunity to enjoy the housing of his choice.  Accordingly, Plaintiffs have failed to present evidence showing that the requested accommodation was necessary as required by 42 U.S.C. section 3604(f) and Arizona Revised Statutes section 41-1491.19.

Based on the foregoing, the Cooke Plaintiffs' Motion for Summary Judgment on the 42 U.S.C. section 3604(f) claim in Count Four is denied.  Defendants' Motions for Summary Judgment on the 42 U.S.C. section 3604(f) claim in Count Four are granted. The Cooke Plaintiffs' and Plaintiff-Intervenor's Motions for Summary Judgment on Count 5 are denied.  Defendants' Motions for Summary Judgment on Count 5 are granted.

### 4.    42 U.S.C. section 3617 (part of Count 4) and Arizona Revised Statutes section 41-1491.18 (Count 8)

Defendant Colorado City, and the Hildale Defendants claim they are entitled to summary judgment on Count Four of the Joint Second Amended Complaint.  In Count Four, the Cooke Plaintiffs allege that all Defendants, with the intent of denying equal housing opportunities to Plaintiffs, violated 42 U.S.C. § 3617.

42 U.S.C. section 3617 provides,

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of

1
2

> his having aided or encouraged any other person in the
> exercise or enjoyment of, any right granted or protected by
> section 3603, 3604, 3605, or 3606 of this title.

3    42 U.S.C.A. § 3617.

4

5    Defendant Colorado City and the Hildale Defendants claim they are entitled to

6    summary judgment on Count Eight of the Joint Second Amended Complaint.  In Count

7    Eight, the Cooke Plaintiffs and Plaintiff-Intervenor allege a claim of unlawful

8    discrimination in violation of Arizona Revised Statutes section 41-1491.18 against all

9    Defendants.  Pursuant to Arizona Revised Statutes section 41-1491.18,

10

> A person may not coerce, intimidate, threaten or interfere
> with any person in the exercise or enjoyment of, or having
> exercised or enjoyed, or on account of his having aided or
> encouraged any other person in the exercise or enjoyment of,
> any right granted or protected by this section and §§ 41-
> 1491.14, 41-1491.15, 41-1491.16, 41-1491.17, 41-1491.19,
> 41-1491.20 and 41-1491.21.

11
12
13
14

15    Ariz. Rev. Stat. § 41-1491.18.

16    To prevail on these claims, the Cooke Plaintiffs must show that (1) they were

17    engaged in a protected activity; (2) they suffered an adverse action via coercion,

18    intimidation, threats or interference; and (3) a causal link exists between the protected

19    activity and the adverse action.  *See Brown v. City of Tucson*, 336 F.3d 1181, 1191-92

20    (9th Cir. 2003) (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)).

21    Defendants argue that the Cookes have not shown that Defendants participated in

22    any form of coercion, intimidation, threats or interferences.  Defendants argue that

23    Defendants, at all time, encouraged the Cookes to comply with the policy, so the Cookes

24    could enjoy the Academy Avenue Property.  Plaintiffs argue that Defendants

25    discriminatory refusal or delay in providing the Cookes municipal services interfered

26    with the Cookes' enjoyment of their dwelling.

27    As discussed more fully in the Court's discussion of Count 6 and part of Count 4

28    above, the Court finds that, from the evidence presented by Plaintiffs, a reasonable jury

could find that the Cookes were either delayed in getting or did not receive municipal services because they were not FLDS members.

Accordingly, Defendants' Motions for Summary Judgment on the 42 U.S.C. section 3617 claim in Count 4 and Count 8 are denied.

### E.    Count Nine

Defendant Colorado City and the Hildale Defendants claim they are entitled to summary judgment on Count Nine of the Joint Second Amended Complaint.  In Count Nine, Plaintiff-Intervenor alleges a claim of a pattern and practice of unlawful discrimination in violation of Arizona Revised Statutes section 41-1491.35 against all Defendants.  Arizona Revised Statutes section 41-1491.35 provides, in relevant part,

> A. The attorney general may file a civil action in superior court for appropriate relief if the attorney general has reasonable cause to believe that either:
> 1. A person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article.
> 2. A person has been denied any right granted by this article and that denial raises an issue of general public importance.

Ariz. Rev. Stat. § 41-1491.35.

Plaintiff-Intervenor alleges that "the Cookes and other non-FLDS persons who reside on or have applied to reside on land owned by the UEP in Colorado City, Arizona and seek to have water connections and other utilities provided by Defendants for housing on UEP property without regard to religion, have been denied rights under Ariz. Rev. Stat. §§ 41-1491.14 and 41-1491.18 of the AFHA by Defendants, and that denial of rights by municipal defendants raises an issue of general public importance."  (Doc. 169 at ¶ 142).  Plaintiffs further allege that "Defendants are engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the AFHA based on religion."  (Doc. 169 at ¶ 143).

The Court has already concluded that there a genuine issues of material fact as to whether Defendants have violated Arizona Revised Statutes sections 41-1491.14 and 41-

1491.18.  Defendants argue that Plaintiffs have failed to present evidence that non-FLDS persons other than the Cookes applied for and were denied water connections and other utilities and, thus, have failed to present evidence sufficient to establish a pattern and practice of discrimination on the part of Defendants.[13]

In Response, Plaintiffs argue that they have shown a demonstrated policy of discrimination and they do not need to prove numerous specific instances of discrimination.  Plaintiffs argue that they have presented testimony from several non-FLDS individuals that were either told there was no point in applying for utility services or felt that it would be futile to apply based on their knowledge of discrimination against non-FLDS individuals by the Cities and their agents.  Plaintiffs further argue that they have presented evidence that Defendants' refusals to cooperate with the efforts of the UEP to make housing available to non-FLDS individuals and to subdivide trust property were well known and would have discouraged others from applying for utilities and water connections.

There are disputed issues of fact with regard to Defendants' alleged violations of 41-1491.14 and 41-1491.18.  Further, Plaintiffs have presented evidence that the Cooke Plaintiffs frequently applied for and were denied a water connection and utilities because they were non-FLDS.  As such, Plaintiffs have presented disputed issues of material fact as to whether the Cookes were denied any rights under the Arizona Fair Housing Act.  Further, the denial of utilities and water service on the basis of religion is an issue of general public importance and, thus, Plaintiffs have presented disputed issues of material

---

[13]   Defendant City of Hildale argues that, as a municipality of Utah, this claim cannot be asserted against it.  Hildale cites to no authority to support this position. Plaintiffs have presented evidence that individuals that may or may not have been acting as agents of the City of Hildale discriminated against the Cookes on the basis of religion. If the State of Arizona can prove that such discrimination was a pattern and practice of individuals that were acting on behalf of the City of Hildale, the Court can see no reason why a claim under Arizona Revised Statues section 41-1491.35(A) could not be brought against the City of Hildale.

1   fact as to whether Defendants have violated § 41-1491.35.

2       Accordingly, Defendants' Motions for Summary Judgment on Count Nine are

3   denied.

4                           **F.      Count Ten**

5       The Cooke Plaintiffs, Defendant Colorado City, and the Hildale Defendants claim

6   they are entitled to summary judgment on Count Ten of the Joint Second Amended

7   Complaint.  In Count Ten, the Cooke Plaintiffs allege that:

> Defendants' refusal to provide water to the Cookes on the same terms and basis as other residents of Colorado City illegally discriminated against the Cookes in violation of established Arizona Law.  *See Town of Wickenburg v. Sabin*, 68 Ariz. 75, 200 P.2d 342 (1948); *TDB Tucson Group, LLC[] v. City of Tucson*, 2CA0CV 2011-0025, Set. 27, 2011 (Div. 2); A.R.S. § 45-492.
> . . .
> As a result thereof, the Court should issue a Writ of Mandamus ordering that the Cookes receive culinary water under the same terms and conditions as all other residents of the city and they should be granted damages for their expenses, loss of water, pain and suffering, emotional distress, inconvenience and denial of their state statutory rights.

Doc. 169 at 30.

19      In their Motion for Summary Judgment, the Cooke Plaintiffs state that they were

20  denied a water hookup for the Academy Avenue Property by the Joint Utility Board,

21  acting under the authority of Defendants Hildale and Colorado City.  The Cooke

22  Plaintiffs argue that the Cities' stated policy of denying water connections to properties

23  that did not have previous water connections unless those properties brought new water

24  to the system and of allowing properties with previous water connections to resume

25  service without the requirement that they bring new water to the Cities discriminates

26  between persons in the service area of the Cities who have not had prior water

27  connections and those who reside on a property where a prior water connection existed.

28

The Cooke Plaintiffs argue that the Arizona Supreme Court, in the *Town of Wickenburg v. Sabin*, recognized that "all inhabitants of a city must be treated equally with respect to the availability of water services."  The Cooke Plaintiffs argue that, because they have presented evidence that their neighbors who reside on the same block as the Academy Avenue Property have lateral connections to the water line, Defendants' requirement that the Cookes contribute water to the system in order to get a new hookup while allowing others to reconnect to the water system without providing a hookup violates the rule that once a municipality decides to provide a utility service to its residents, it must do so for all without discrimination.

In Response, Defendants argue that they are entitled to summary judgment on Count Ten because, in the Complaint, the Cookes rely on Arizona Revised Statutes section 45-492, which does not apply to Defendants because they are not active management areas within the meaning of that statute.  In Reply, the Cooke Plaintiffs' withdrew their reliance on Arizona Revised Statutes section 45-492 as a basis for their claim in Count Ten.

Further, Defendant Hildale argues that Plaintiffs cannot obtain a writ of mandamus against it because it has no duty to provide water service to non-residents of its municipality.  Indeed, in Court Ten of the Complaint, Plaintiffs only allege that Defendant Colorado City illegally discriminated against the Cookes in violation of established Arizona law by failing to provide them water.  The Court agrees that, if a writ of mandamus is an available remedy in this case, it could not be an available remedy against the Hildale Defendants because Plaintiffs have failed to establish that the City of Hildale has a duty to provide residents of Colorado City with municipal services.  The Cooke Plaintiffs have failed to address this argument in their reply in support of their Motion for Summary Judgment.  Accordingly, summary judgment is granted in favor of the Hildale Defendants on Count Ten.

Defendant Colorado City argues that *Sabin* and *TDB Tucson Group, L.L.C. v. City of Tucson*, do not support the Cooke Plaintiffs' request for summary judgment.

- 35 -

In *Sabin*, the Town of Wickenburg, a municipal corporation, was the owner of the municipal water and electric distributions systems with an exclusive monopoly within the boundaries of the Town of Wickenburg.   200 P.2d at 342.   Mr. Sabin lived in a subdivision that had become part of the Town of Wickenburg five and a half months prior to the day he applied for water and electric service to the town clerk.  *Id.*  When Mr. Sabin applied to the town clerk for water and electric service for the tent house where he lived, he attempted to tender the customary $5.00 fee for receipt of each of the services.  *Id.* at 343.   Although the water distribution system and the electric line had been previously extended by the Town of Wickenburg into the immediate area adjacent to Mr. Sabin's home in his subdivision, Mr. Sabin was informed by the town clerk that his application for utility services would be denied unless he put up a $50.00 deposit to guarantee the building of a permanent residence on the lot.  *Id.*  When Mr. Sabin refused to comply with the condition, the Town of Wickenburg denied him both water and electric service.  *Id.*

Mr. Sabin then brought a mandamus action in the Superior Court of Maricopa County to compel the town to extend him utility services.   *Id.*  After briefing and a hearing[14] wherein the Superior Court made factual findings, the Superior Court issued a peremptory writ of mandamus directing the town to furnish services upon payment of the usual and customary fees to Mr. Sabin.  *Id.*

The Town of Wickenburg then appealed to the Arizona Supreme Court.  *Id.*  Mr. Sabin argued that he was entitled to the writ of mandamus based on the Town of

---

[14]   The *Sabin* opinion states that there was a hearing, but later refers to testimony heard at "trial."   *Compare* 200 P.3d at 343 ("after a hearing before the court and consideration by it of the briefs submitted by the parties, it was ordered that a peremptory writ of mandamus issue ordering and directing the town to furnish the services upon payment of the usual and customary fees.  This appeal by the town followed.") *with* 200 P.3d at 344 ("It developed, however, at the trial that appellee with Chapman's consent, had made an unauthorized electrical connection . . . .").   It is not clear to the Court whether the Arizona Supreme Court was referring to two different events, a hearing and a later trial or if the Court considered the "hearing" to be a bench trial.

Wickenburg's arbitrary and unjust discrimination against him.  *Id.*  Mr. Sabin argued that the decision to require him to pay $50.00 was arbitrary and discriminatory because his neighbor, Chapman, who was living in a similar tent house on an adjacent lot only paid the customary fees and was given utilities services.  *Id.*  There was no question that the Town of Wickenburg had an abundant supply of water and sufficient electric power to supply the needs of all within its limits.  *Id.*

Although there was some dispute, evidence presented at the hearing established that, to connect Mr. Sabin's home with the water line serving the Chapman's house would require four hours of labor, one pole, and 600 feet of wire.  *Id.*  The Town of Wickenburg argued that the power line serving Chapman's home was not up to standard and to attempt to extend that power line to Mr. Sabin's home would require the rebuilding of two spans of secondary and one span of primary line, the installation of poles and a transformer and a cost of $250 to $275.  *Id.*  The Court found this argument contradicted by the fact that Mr. Sabin actually made an unauthorized connection to the power line serving Chapman's home, which was apparently successful, until the Town of Wickenburg learned of it and cut Mr. Sabin's connection off.  *Id.*

At the hearing, the town clerk admitted from the witness stand that there had been no official ordinance or resolution enacted or passed requiring the collection of a $50.00 deposit or the giving of a bond to insure the construction of permanent buildings.  *Id.*  Further, such deposit or bond had not been required by any other member of the town.  *Id.*

The Arizona Supreme Court summarized the law on discrimination as applied to public service corporations as:

> The rule forbidding unjust discrimination has been variously expressed: The charges must be equal to all for the same service under like circumstances. A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price it makes to every other patron for the same or substantially the same or similar

> service. It "must be equal in its dealings with all." It "must treat the members of the general public alike." All patrons of the same class are entitled to the same service on equal terms. "The law will not and cannot tolerate discrimination in the charges of these quasi-public corporations. There must be equality of rights to all and special privileges to none." "A person having a public duty to discharge is undoubtedly bound to exercise such office for the equal benefit of all." "All should be treated alike; equality of rights requires equality of service." "The duty owed to all alike involved obligations to treat all alike." "The common law upon the subject is founded on public policy which requires one engaged in a public calling to charge a reasonable and uniform price to all persons for the same service rendered under the same circumstances.

*Id.* at 343-44 (quoting McQuillin Municipal Corporations, 2d Ed., Vol. 4, section 1829).

The Arizona Supreme Court then stated, "And a municipality undertaking to supply water to its inhabitants stands in no different relation as to the right to discriminate from that of private corporations." *Id.* at 343 (quoting 27 R.C.L., Waterworks, sec. 66) (other citations omitted). "A requirement by a public service corporation that its patrons furnish a deposit or a guaranty as security for payment of future service has been held to be improper discrimination, where it is enforced against some, but not against all, of its patrons." *Id.* (quoting 43 Am. Jur., Public Utilities and Services, sec. 44).

In light of this law, the Arizona Supreme Court speculated that if "granting utility services to appellee involved an extension of services into an entirely new territory within the town limits," the action of the Town of Wickenburg, in rejecting the service, might well be justified because "a municipality, as distinguished from a private utility corporation, may exercise a governmental discretion as to the limits to which it is advisable to extend its water mains and power lines, and an extension will not be compelled by the courts at the instances of an inhabitant." *Id.* at 345. Despite this speculation, the Arizona Supreme Court found it unnecessary to adopt this rule for the purposes of deciding the case. *Id.*

The Arizona Supreme Court then found that there was ample evidence in the

1    record

> that appellee had suffered an arbitrary and unjust
> discrimination at the hands of the appellant, acting through its
> regularly constituted officers, by the attempted exaction of the
> $50.00 deposit or bond not required of others, and the refusal,
> unless this requirement was met, to grant to him the utility
> services accorded his neighbors.

*Id.* at 345.

The Arizona Court of Appeals has recently stated that the rule announced in *Sabin* and its progeny stands for the proposition that "although it is not required to do so, once a municipality decides to provide a utility service to its residents, it must do so for all [residents within municipal boundaries] without discrimination." *TDB Tucson Group, L.L.C. v. City of Tucson*, 263 P.3d 669, 673 (Ariz. Ct. App. 2011).

The Cooke Plaintiffs argue that, as in *Sabin*, in this case, Colorado City chose to provide water service to some of its residents (those requesting reconnection as opposed to a new connection) without requiring them to bring physical water to the system and Colorado City provided such services to individuals on the same block as the Academy Avenue Property, but denied the Cookes service. Plaintiffs argue that, when Colorado City required the Cookes to bring physical water to the system to obtain water service, without imposing the same requirement against individuals requesting reconnection of their water, Colorado City arbitrarily and unjustly discriminated against the Cookes.

Colorado City argues that *Sabin* is distinguishable because, in *Sabin*, the town of Wickenburg owned the water and electric systems and, in this case, Twin City Water Works owns the water rights and supplies all the water to the system. Defendant Colorado City further argues that, in *Sabin*, the Town of Wickenburg admitted it had an abundant supply of water and here, Colorado City has experienced a shortage of culinary water. Further, Defendant Colorado City argues that, in *Sabin*, the $50 policy was first applied to Plaintiff and, in this case, Colorado City had the policy before the Cookes requested culinary water. Further, Colorado City argues that, unlike the Town of Wickenburg in *Sabin*, it has always treated people of the same class on equal terms.

1    Colorado City argues that Plaintiffs can only succeed on this claim upon a finding that

2    the governmental decision to limit new culinary water connections was arbitrary, and

3    thus, the Cookes are entitled at best to a factual determination following trial.

4          The Court finds summary judgment on this Count inappropriate.   Defendant

5    Colorado City has failed to convince the Court that the differences between *Sabin* and

6    this case are dispositive on Count Ten.    For instance, the fact that Twin City Water

7    Works actually owns the water at issue could be relevant under certain factual

8    circumstances not discussed by either party on summary judgment.   Nonetheless, the rule

9    of *Sabin* still applies— because Colorado City decided "to provide a utility service to its

10   residents, it must do so for all [residents within municipal boundaries] without

11   discrimination."  Plaintiffs have provided evidence that the "policy" at issue was arbitrary

12   and discriminatory between residents of the town in equivalent positions.

13         Nonetheless, the Court finds summary judgment in favor of Plaintiffs

14   inappropriate on their claim against Colorado City because the Court needs to make

15   factual findings that are not in the Record to support issuance of a writ of mandamus.

16   Further, Plaintiffs have not convinced the Court that it can issue a writ of mandamus as

17   requested.   *See* Fed. R. Civ. P. 81(b) ("The writs of scire facias and mandamus are

18   abolished.   Relief previously available through them may be obtained by appropriate

19   action or motion under these rules.").    Accordingly, the Court denies the Cooke

20   Plaintiffs' Motion for Summary Judgment on Count Ten of the Complaint and denies

21   Colorado City's Motion for Summary Judgment on Count Ten of the Complaint.

22         Within 20 days of the date of this Order, the Cooke Plaintiffs and Defendant

23   Colorado City shall submit separate trial memoranda to the Court addressing (1) under

24   what authority this Court may issue a writ of mandamus; (2) stating whether the Parties'

25   believe that Count Ten presents an issue for the Court, and not the jury; and (3) a

26   proposed order containing proposed findings of fact, conclusions of law, including (for

27   the Cooke Plaintiffs only) the language of the proposed "writ;" and (4) the Cooke

28   Plaintiffs shall state under what authority they are entitled to the other remedies sought in

- 40 -

Count Ten of their Complaint.  Each trial memorandum is not to exceed eight pages, excluding caption and signature lines.  If such trial memorandum does exceed eight pages, it will be stricken from the Record.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant the Town of Colorado City's Motion for Summary Judgment (Doc. 264) is granted in part and denied in part as follows:

Defendant Colorado City's Motion for Summary Judgment is granted on Count Three, the 42 U.S.C. 3604(a) and 42 U.S.C. section 3604(f) claims in Count Four, Count Five, and Count Seven.

Defendant Colorado City's Motion for Summary Judgment is denied on the 42 U.S.C. section 3604(b) and 42 U.S.C. section 3617 claims in Count 4, Count 6, Count 8, Count 9, and Count 10.

**IT IS FURTHER ORDERED** that the Cooke Plaintiffs' Motion for Partial Summary Judgment (Doc. 266) is denied as follows:

The Cooke Plaintiffs' Motion for Summary Judgment is denied to the extent that it requests that the Court find vicarious liability on behalf of the Town of Colorado City and the City of Hildale for the unspecified conduct of various individuals and entities as discussed herein.  To the extent that Plaintiffs are seeking specific jury instructions, Plaintiffs' may re-raise those issues when the Court instructs the Parties to submit proposed jury instructions.

The Cooke Plaintiffs' Motion for Summary Judgment on the 42 U.S.C. section 3604(f) claim in Count Four, Count 5 and Count 10 is denied.

**IT IS FURTHER ORDERED** that Plaintiff-Intervenor the State of Arizona's Motion for Summary Judgment (Doc. 269) is denied as follows:

Plaintiff-Intervenor's Motion for Summary Judgment on Count 5 is denied.

**IT IS FURTHER ORDERED** that the City of Hildale, Hildale-Colorado City Utilities, Twin City Power, and Twin City Water Authority's Motion for Summary

Judgment (Doc. 267) is granted in part and denied in part as follows:

The Hildale Defendants' request to dismiss the Hildale-Colorado City Utilities as non-jural entities in the Hildale Defendants' Motion for Summary Judgment is denied without prejudice.

The Hildale Defendants' Motion for Summary Judgment is granted on Count Three, the 42 U.S.C. 3604(a) and the 42 U.S.C. section 3604(f) claims in Count Four, Count Five, Count Seven, and Count Ten.

The Hildale Defendants' Motion for Summary Judgment is denied on the 42 U.S.C. section 3604(b) and the 42 U.S.C. section 3617 claims in Count 4, Count 6, Count 8, and Count 9.

**IT IS FURTHER ORDERED** that, within 20 days of the date of this Order, the Cooke Plaintiffs and Defendant Colorado City shall submit separate trial memoranda to the Court addressing (1) under what authority this Court may issue a writ of mandamus; (2) stating whether the Parties' believe that Count Ten presents an issue for the Court, and not the jury; and (3) a proposed order containing proposed finds of fact, conclusions of law, including (for the Cooke Plaintiffs only) the language of the proposed "writ;" (4) the Cooke Plaintiffs shall likewise state under what authority they are entitled to the other remedies sought in Count Ten of their Complaint.  Each trial memorandum is not to exceed eight pages, excluding caption and signature lines.  If such trial memorandum does exceed eight pages, it will be stricken from the Record.

Dated this 13th day of February, 2013.

James A. Teilborg
United States District Judge