**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Ronald Cooke, et al., | No. CV-10-08105-PCT-JAT |
|---|---|
| Plaintiffs, | **ORDER** |
| v. | |
| Town of Colorado City, et al., | |
| Defendants. | |

On March 20, 2014, the jury in this case returned a verdict in favor of Plaintiffs Ron and Jinjer Cooke (collectively, the "Cookes") and Plaintiff-Intervenor the State of Arizona (the "State"). (Doc. 584). Following this verdict, two issues remain outstanding.[1] First, the Court must rule on the pending motions concerning the State's desire to reopen the evidentiary record in this case and admit evidence discovered after the verdict was reached. Second, the Court must determine whether the State is entitled to equitable relief on its claims and if so, the extent of that relief.

**I.    Motion to Reopen the Evidentiary Record**

The jury returned the verdict in this case on March 20, 2014. (Doc. 584). On June 16, 2014, the State filed its "Motion for Leave to File Motion for Leave to Re-Open the Evidentiary Record" (Doc. 685). In this motion, the State requests that pursuant to Federal Rules of Civil Procedure ("Rules") 1 and 60(b)(2), (3), and (6) the Court permit

---

[1] This Order and the accompanying Judgment do not address the Cookes' claims because pursuant to the stipulation of the Cookes and Defendants (Doc. 701), the Court previously dismissed all of the Cookes' claims. *See* (Doc. 702).

the State to file a motion to reopen the evidentiary record to admit newly discovered evidence. (*Id.* at 1). The State has attached this latter proposed motion to reopen the record as an exhibit to the first motion. The State's newly-discovered evidence consists of the deposition of Helaman Barlow taken in a related case between the U.S. Department of Justice and Defendants. In that deposition, Barlow repeatedly admitted that he lied during his testimony both in his deposition and trial in this case. *E.g.*, (Doc. 685-1 at 192, 213-14).

The State contends that Rule 60 provides "for judicial relief predicated upon newly discovered evidence, the fraud of an opposing party, and principles of fundamental fairness" and argues that the interests of justice necessitate reopening the evidentiary record to admit Barlow's testimony at his deposition. (*Id.* at 11). Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for reasons including newly discovered evidence that could not have been discovered in time to move for a new trial, fraud, or "any other reason that justifies relief."

At the time the State filed its motion, there was no final judgment, order, or proceeding in this case from which the Court could grant relief. Rule 60 is inapplicable here. The Court has searched the Rules and is unable to identify a specific rule under which the State's motion may appropriately be brought. Nevertheless, "[w]hile it is not entirely clear which Federal Rule of Civil Procedure authorizes district courts to reopen an evidentiary record prior to judgment, it is clear that district courts have the discretion to grant such a motion: such an application to reopen the record is committed to the sound discretion of the district court." *Romeo v. Sherry*, 308 F. Supp. 2d 128, 138-39 (E.D.N.Y. 2004); *see also Keith v. Volpe*, 858 F.2d 467, 478 (9th Cir. 1988) (court sua sponte reopened the evidentiary record after trial and before judgment).

In this case, the State was victorious on its claims against Defendants. Barlow's deposition testimony regarding his perjury at trial is not needed to correct the trial record because implicit in the jury's findings was a determination that Barlow's trial testimony

- 2 -

was not credible. As the State was victorious despite Barlow's testimony, there is no impetus for reopening the evidentiary record to admit additional evidence supporting the jury's finding. The Court will deny the State's motion. Because the State's proposed motion will not be filed, the Court need not consider the State's supplement to that motion (Doc. 696) and Defendants' motion to strike the supplement (Doc. 698) is moot.

## II.  Equitable Relief

### A.  Findings of Fact

On March 20, 2014 the jury returned its verdict in this case making the following findings. First, the jury found by a preponderance of the evidence that Defendants[2] violated the federal Fair Housing Act and the Arizona Fair Housing Act by discriminating against the Cookes in the provision of services or facilities because of religion. (Doc. 584 at 2). On this claim, the jury found that Defendants were jointly and severally liable for damages because they all committed the same unlawful act as, acted in concert with, or acted as an agent or servant of another defendant. (*Id.*) The jury found the damages to Ron Cooke to be $650,000 and the damages to Jinjer Cooke to be $650,000. (*Id.*)

Second, the jury found by a preponderance of the evidence that Defendants violated the federal Fair Housing Act and the Arizona Fair Housing Act by coercing, intimidating, threatening, interfering with, or retaliating against the Cookes in the enjoyment of their dwelling because (1) of religion or (2) the Cookes asserted rights, or encouraged others to assert their rights, protected by the federal Fair Housing Act or the Arizona Fair Housing Act. (*Id.* at 5). On this claim, the jury found that Defendants were jointly and severally liable for damages because they all committed the same unlawful act as, acted in concert with, or acted as an agent or servant of another defendant. (*Id.*) The jury found the damages to Ron Cooke to be $1,950,000 and the damages to Jinjer Cooke

---

[2] Because each of the jury's findings included all defendants in this case, the Court uses the term Defendants to refer collectively to the Town of Colorado City, City of Hildale, Hildale-Colorado City Utilities, Twin City Water Authority, and Twin City Power.

- 3 -

1  to be $1,950,000. (*Id.*)

2  Third, the jury found by a preponderance of the evidence that Defendants violated

3  the Arizona Fair Housing Act by engaging in a pattern or practice of resistance to the full

4  enjoyment of any right granted by the Act.[3] (*Id.* at 8).

---

[3] At summary judgment and during trial, the Court assumed that the State's pattern-or-practice claim against Defendants was a valid independent cause of action and none of the parties disputed its existence. However, the Court has an independent duty to ensure that it enters judgment according to the law. The Court concludes that there is no independent cause of action for a pattern or practice of discrimination; rather, a showing of pattern or practice establishes the attorney general's standing to sue. This is evident from the plain language of the statute, which recites the requirements for standing but contains no elements of a claim under that section. It is further supported by courts' interpretations of the similar language of the federal Fair Housing Act ("FFHA").

The language of the Arizona Fair Housing Act concerning a pattern or practice of discrimination closely tracks that of the FFHA:

> The attorney general may file a civil action in superior court for appropriate relief if the attorney general has reasonable cause to believe that either:
>
> 1. A person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article.
>
> 2. A person has been denied any right granted by this article and that denial raises an issue of general public importance.

A.R.S. § 41-1491.35(A).

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court.

41 U.S.C. § 3614(a).

Courts interpreting the FFHA have held that this provision confers standing to sue upon the attorney general. *See, e.g.*, *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 122 (5th Cir. 1973). The confusion as to whether a pattern or practice claim exists is not uncommon. *See United States v. City of Parma, Ohio*, 494 F. Supp. 1049, 1095 (N.D. Ohio 1980); *United States v. Real Estate Dev. Corp.*, 347 F. Supp. 776, 783 (N.D. Miss. 1972). With respect to Title VII, which incorporates a statute very similar to the FFHA and Arizona Fair Housing Act, *see* 42 U.S.C. § 2000e-6(a), the Second Circuit Court of Appeals clarified that language concerning a pattern or practice "simply refers to a method of proof and does not constitute a 'freestanding cause of action,'" *Parisi v.*

- 4 -

The Court agrees with and adopts the jury's findings in this case as its own. The Court also adopts the jury's advisory finding with respect to Defendants engaging in a pattern or practice of resistance to rights protected under the Arizona Fair Housing Act.

### B. Conclusions of Law

#### 1. Civil Penalties

A.R.S. § 41-1491.35 permits the Court to assess a civil penalty against the defendants in an action brought by the Attorney General under the Arizona Fair Housing Act for the purpose of "vindicat[ing] the public interest." The amount of such a civil penalty must not exceed $50,000 for a first violation. A.R.S. § 41-1491.35(B)(3)(a). Although there are no statutory guidelines for applying this provision under the Arizona Fair Housing Act, an analogous provision exists in the federal Fair Housing Act ("FFHA"). *See* 41 U.S.C. § 3614(a).

The Court has discretion to determine the appropriate amount of a civil penalty such that the public interest is vindicated. *See Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 13 F.3d 920, 932 (6th Cir. 1993) (FFHA). The legislative history of the FFHA specifies factors that a court should consider in determining an appropriate amount: "the nature and circumstances of the violation, the degree of culpability, any history of past violations, the financial circumstances of that Defendant and the goal of deterrence, and other matters that justice may require." *Id.* (quoting H.R. Rep. No. 100-711, at 40 (1988)).

Considering the finding that Defendants have engaged in a pattern or practice of

---

*Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) (quoting *Chin v. Port Authority of N.Y.*, 685 F.3d 135, 148 n.8 (2d Cir. 2012)). Title VII discrimination analysis applies to FFHA discrimination claims. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

Accordingly, the State's pattern-or-practice claim against Defendants is not a separate claim and the Court will not enter judgment on it. The jury's verdict in this regard was advisory and serves to confirm the attorney general's proper standing to intervene in this case. The Court's conclusion is of no practical distinction to this case, however, because the State remains as an intervenor-plaintiff on the claims for discrimination in providing services or facilities and for intimidation or interference with rights. A.R.S. § 41-1491.35 permits the Court to award relief to the State in this action because the State intervened under that statute.

1 resistance to rights protected under the Arizona Fair Housing Act, the goal of deterring Defendants from continuing this pattern or practice, and the serious injury caused by Defendants (as evidenced by the jury's finding that the Cookes sustained $5.2 million in injuries), the Court concludes that the maximum civil penalty of $50,000 is appropriate. Because all of the Defendants discriminated against the Cookes and have been engaged in a pattern or practice of discrimination, the Court assesses a $50,000 penalty against each Defendant.

### 2. Injunctive Relief

The State and Defendants have vigorously briefed and contested the appropriate scope of injunctive relief in this case. A.R.S. § 41-1491.35 permits the Court to "[a]ward preventive relief, including a permanent or temporary injunction, restraining order or other order against the person responsible for a violation of [the Arizona Fair Housing Act] as necessary to assure the full enjoyment of the rights granted by this article." The Court has carefully considered the State's proposed form of judgment (Doc. 687-1), the Defendants' response (Doc. 689), and the State's reply in support of its proposed form of judgment (Doc. 695).

The Court is mindful that the State has requested a permanent injunction that mandates, in part, the disbandment of the Colorado City Marshal's Office and the Hildale City Police Department, the replacement of these law enforcement agencies with county sheriffs, the appointment of a monitor to observe and report on Defendants' activities, training for Defendants' employees concerning discrimination, and the securing of new water sources. But "[i]njunctive relief may be inappropriate where it requires constant supervision." *Natural Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1300 (9th Cir. 1992).

The State's proposed relief, if granted, would burden both Defendants and the State with a layer of bureaucracy extending into potential perpetuity. The Court does not doubt that the disbanding of the local law enforcement and the appointment of a monitor would be effective at preventing future discrimination by Defendants. However,

considering all the facts of the case, more narrowly tailored injunctive relief is appropriate.

The Court will permanently enjoin Defendants from discriminating on the basis of religion in performing their official duties and retain jurisdiction in this case for ten years. If Defendants violate the injunction, the State or an aggrieved party will be able to move for an order finding Defendants in contempt and assessing appropriate remedies. This will lessen the burden of remedying any future discrimination vis-à-vis filing a new lawsuit. This injunction recognizes that because it has been proven that Defendants have engaged in a pattern or practice of discrimination, Defendants' future conduct merits heightened scrutiny.

### 3. Attorneys' Fees

The State has requested an award of attorneys' fees and taxable costs in this case. A.R.S. § 41-1491.35(B)(2) permits the Court to award "reasonable attorney fees and court costs." The Court concludes that the State is entitled to its reasonable attorneys' fees and taxable costs because the State prevailed on all claims in this lawsuit and considering the pervasiveness and severity of the Defendants' discrimination, an award of fees and costs is necessary to deter such conduct in the future both by Defendants and by others who would engage in discrimination.

### III. Conclusion

Pursuant to Federal Rule of Civil Procedure 58(a), which requires judgments to be set forth in a separate document, the Court has entered its judgment in a separate document filed contemporaneously with this Order. To the extent the judgment does not grant all of the relief discussed in this Order,

**IT IS ORDERED** denying Plaintiff-Intervenor State of Arizona's Motion for Leave to File Motion for Leave to Re-open the Evidentiary Record (Doc. 685).

**IT IS FURTHER ORDERED** denying as moot Defendants' Joint Motion to Strike Plaintiff-Intervenor's Notice of Supplement to Motion for Leave to Re-open the Evidentiary Record (Doc. 698).

1 **IT IS FURTHER ORDERED** that the State may move for an award of attorneys' fees in accordance with Local Rule of Civil Procedure 54.2. The motion for an award of attorneys' fees shall be accompanied by an electronic spreadsheet, to be e-mailed to the Court and opposing counsel, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet shall be organized with rows and columns and shall automatically total the amount of fees requested so as to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its memorandum of points and authorities filed in support of its motion. A party opposing a motion for attorneys' fees shall e-mail to the Court and opposing counsel a copy of the moving party's spreadsheet adding any objections to each contested billing entry (next to each row, in an additional column) so as to enable the Court to efficiently review the objections and recompute the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the non-moving party of the requirements of Local Rule 54.2(f) concerning its responsive memorandum.

**IT IS FURTHER ORDERED** that the State is entitled to an award of its taxable costs and the State may file a notice of taxable costs in accordance with Local Rule of Civil Procedure 54.1.

Dated this 4th day of September, 2014.

James A. Teilborg
Senior United States District Judge