**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Cooke, et al., | No. CV-10-08105-PCT-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Town of Colorado City, et al., | |
| Defendants. | |

Pending before the Court is the State of Arizona's Motion to Amend the Judgment (Doc. 713). The Court now rules on the motion.

**I.  Background**

During this case, including at trial, Plaintiff-Intervenor State of Arizona (the "State") alleged three claims against Defendants Town of Colorado City, City of Hildale, Hildale-Colorado City Utilities, Twin City Water Authority, and Twin City Power (collectively, "Defendants"). First, the State claimed that Defendants violated the federal Fair Housing Act ("FFHA") and the Arizona Fair Housing Act ("AFHA") by discriminating against Plaintiffs Ron and Jinjer Cooke (the "Cookes") in the provision of services or facilities because of religion. (Doc. 169 at 24, 25-27). Second, the State claimed that Defendants violated the FFHA and AFHA by retaliating or interfering with the Cookes' enjoyment of their dwelling because of religion or because of the Cookes' assertions of their rights. (*Id.* at 24, 27-28). Third, the State claimed that Defendants engaged in a pattern or practice of resistance to the full enjoyment of rights granted under the AFHA. (*Id.* at 29).

At trial, the Court instructed the jury on all three claims. The Court quotes its previous Order:

> On March 20, 2014 the jury returned its verdict in this case making the following findings. First, the jury found by a preponderance of the evidence that Defendants[1] violated the federal Fair Housing Act and the Arizona Fair Housing Act by discriminating against the Cookes in the provision of services or facilities because of religion. On this claim, the jury found that Defendants were jointly and severally liable for damages because they all committed the same unlawful act as, acted in concert with, or acted as an agent or servant of another defendant. The jury found the damages to Ron Cooke to be $650,000 and the damages to Jinjer Cooke to be $650,000.
>
> Second, the jury found by a preponderance of the evidence that Defendants violated the federal Fair Housing Act and the Arizona Fair Housing Act by coercing, intimidating, threatening, interfering with, or retaliating against the Cookes in the enjoyment of their dwelling because (1) of religion or (2) the Cookes asserted rights, or encouraged others to assert their rights, protected by the federal Fair Housing Act or the Arizona Fair Housing Act. On this claim, the jury found that Defendants were jointly and severally liable for damages because they all committed the same unlawful act as, acted in concert with, or acted as an agent or servant of another defendant. The jury found the damages to Ron Cooke to be $1,950,000 and the damages to Jinjer Cooke to be $1,950,000.
>
> Third, the jury found by a preponderance of the evidence that Defendants violated the Arizona Fair Housing Act by engaging in a pattern or practice of resistance to the full enjoyment of any right granted by the Act.
>
> The Court agrees with and adopts the jury's findings in this case as its own. The Court also adopts the jury's advisory finding with respect to Defendants engaging in a pattern or practice of resistance to rights protected under the Arizona Fair Housing Act.

(Doc. 703 at 3-5) (citations and footnotes omitted).

During the process of drafting the subsequent judgment and permanent injunction, the Court became concerned that the State's pattern-or-practice claim was not an

---

[1] Because each of the jury's findings included all defendants in this case, the Court uses the term Defendants to refer collectively to the Town of Colorado City, City of Hildale, Hildale-Colorado City Utilities, Twin City Water Authority, and Twin City Power.

independent cause of action but merely a procedural mechanism for the State to file a lawsuit and obtain a broader scope of relief than would be available to an individual plaintiff. The Court, without briefing from the parties, found the latter to be true and declined to enter judgment on this claim, explaining its reasoning as follows:

> At summary judgment and during trial, the Court assumed that the State's pattern-or-practice claim against Defendants was a valid independent cause of action and none of the parties disputed its existence. However, the Court has an independent duty to ensure that it enters judgment according to the law. The Court concludes that there is no independent cause of action for a pattern or practice of discrimination; rather, a showing of pattern or practice establishes the attorney general's standing to sue. This is evident from the plain language of the statute, which recites the requirements for standing but contains no elements of a claim under that section. It is further supported by courts' interpretations of the similar language of the federal Fair Housing Act ("FFHA").
>
> The language of the Arizona Fair Housing Act concerning a pattern or practice of discrimination closely tracks that of the FFHA:
>
>> The attorney general may file a civil action in superior court for appropriate relief if the attorney general has reasonable cause to believe that either:
>>
>> 1. A person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article.
>>
>> 2. A person has been denied any right granted by this article and that denial raises an issue of general public importance.
>
> A.R.S. § 41-1491.35(A).
>
>> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court.
>
> 41 U.S.C. § 3614(a).

> Courts interpreting the FFHA have held that this provision confers standing to sue upon the attorney general. *See, e.g.*, *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 122 (5th Cir. 1973). The confusion as to whether a pattern or practice claim exists is not uncommon. *See United States v. City of Parma, Ohio*, 494 F. Supp. 1049, 1095 (N.D. Ohio 1980); *United States v. Real Estate Dev. Corp.*, 347 F. Supp. 776, 783 (N.D. Miss. 1972). With respect to Title VII, which incorporates a statute very similar to the FFHA and Arizona Fair Housing Act, *see* 42 U.S.C. § 2000e-6(a), the Second Circuit Court of Appeals clarified that language concerning a pattern or practice "simply refers to a method of proof and does not constitute a 'freestanding cause of action,'" *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) (quoting *Chin v. Port Authority of N.Y.*, 685 F.3d 135, 148 n.8 (2d Cir. 2012)). Title VII discrimination analysis applies to FFHA discrimination claims. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).
>
> Accordingly, the State's pattern-or-practice claim against Defendants is not a separate claim and the Court will not enter judgment on it. The jury's verdict in this regard was advisory and serves to confirm the attorney general's proper standing to intervene in this case. The Court's conclusion is of no practical distinction to this case, however, because the State remains as an intervenor-plaintiff on the claims for discrimination in providing services or facilities and for intimidation or interference with rights. A.R.S. § 41-1491.35 permits the Court to award relief to the State in this action because the State intervened under that statute.

(*Id.* at 4 n.3).

The State now moves pursuant to Federal Rule of Civil Procedure ("Rule") 59(e) to amend the Court's Judgment and Permanent Injunction filed at Doc. 704. (Doc. 713 at 1). The State asserts that the Court erred in declining to recognize its pattern-or-practice claim as a separate cause of action. (*Id.* at 2).

## II. Rule 59(e) Standard

A district court "enjoys considerable discretion in granting or denying" a Rule 59(e) motion to amend its judgment. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or

previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Id.* However, "amending a judgment after its entry is "an extraordinary remedy which should be used sparingly." *Id.*

### III. Analysis

The State argues that the Court must amend its September 4, 2014 Judgment and Permanent Injunction (the "Judgment") because the Court committed manifest legal error resulting in manifest injustice when it declined to recognize the State's pattern-or-practice claim as an independent cause of action. (Doc. 713 at 1-2). In determining whether the Court committed manifest legal error, the Court must reexamine its prior decisional process as well as the relevant legal authorities, including the cases and arguments cited by the State.

#### A. The Court's Prior Interpretation of A.R.S. § 41-1491.35

Section 41-1491.35 of the Arizona Revised Statutes ("A.R.S.") controls the scope of a pattern-or-practice case under the AFHA. The entirety of the statute is as follows:

> A. The attorney general may file a civil action in superior court for appropriate relief if the attorney general has reasonable cause to believe that either:
>
> 1. A person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article.
>
> 2. A person has been denied any right granted by this article and that denial raises an issue of general public importance.
>
> B. In an action under this section the court may:
>
> 1. Award preventive relief, including a permanent or temporary injunction, restraining order or other order against the person responsible for a violation of this article as necessary to assure the full enjoyment of the rights granted by this article.
>
> 2. Award other appropriate relief, including monetary damages, reasonable attorney fees and court costs.
>
> 3. To vindicate the public interest, assess a civil penalty against the respondent in an amount that does not exceed:

- 5 -

    (a) Fifty thousand dollars for a first violation.

    (b) One hundred thousand dollars for a second or subsequent violation.

A.R.S. § 41-1491.35 (2014).

According to the Court's reading of this statute at the time it issued its prior Order, subsection A does not specify any elements of a statutory cause of action, but provides that the "attorney general *may* file a civil action in superior court for appropriate relief" upon having a reasonable cause to believe either of two conditions are satisfied. Thus, the Court concluded that subsection A concerns statutory standing, granting standing to the attorney general if certain conditions are met.

The only other subsection of the statute, subsection B, specifies the type of relief available "[i]n an action under this section." This language, read in conjunction with the forms of relief enumerated in (B), guided the Court's conclusion that the legislature did not intend the statute to create an independent cause of action but rather to expand the availability of otherwise-extant AFHA causes of action in cases of widespread discrimination. Because the Court could not find any elements of a cause of action within the statute, the Court concluded the statute was not intended to create an independent cause of action.

The Court also concluded that regardless of whether the statute created an independent cause of action or merely grafted expanded remedies and statutory standing onto other causes of actions under the AFHA, it was clear that the statute grants the Court the power to enter expansive remedies "as necessary to assure the full enjoyment of the rights granted by this article." Thus, under the Court's original reading of the statute, the Court had the power to award remedies concerning nonparties to the litigation as well as general injunctive relief towards Defendants as necessary to stop an unlawful pattern or practice of discrimination (or to stop the denial of rights protected under the AFHA).

For these reasons, the Court declined to enter judgment on the pattern-or-practice claim but noted that in light of A.R.S. § 41-1491.35(B), its non-recognition of the claim

was irrelevant to the relief granted. *See* (Doc. 703 at 4 n.3).

## B. Definition of a Cause of Action

Because the issue presently before the Court is whether the State had a cause of action under A.R.S. § 41-1491.35(A) against Defendants, the first question to be resolved is the appropriate definition of a "cause of action." Although the parties and the Court have spoken in this case of an "independent cause of action," the word "independent" is superfluous.

In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court explained the distinction between claims, standing, rights, and causes of action. There, the Supreme Court noted that "*standing* is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy . . . *cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and *relief* is a question of the various remedies a federal court may make available." 442 U.S. at 239 n.18. Thus, "[i]f a litigant is an appropriate party to invoke the power of the courts, it is said that he has a 'cause of action' under the statute, and that this cause of action is a necessary element of his 'claim.' . . . The concept of a 'cause of action' is employed specifically to determine who may judicially enforce the statutory rights or obligations." *Id.* at 239.

Here, there is no dispute that the State has standing under A.R.S. § 41-1491.35(B) to file a lawsuit against Defendants, nor is there any actual dispute as to the nature or scope of the remedies available to the Court.[2] Instead, the dispute is whether A.R.S. § 41-1491.35(B) creates a substantive right such that when combined with the existence of standing, the State has a cause of action (and therefore a claim) against Defendants. If the State has a pattern-or-practice claim against Defendants, then the Court must enter judgment on that claim to close out the case. If not, then the Court must not enter judgment on a nonexistent claim.

---

[2] Although the State alleges that the Court limited its relief based upon its determination that there was no pattern-or-practice claim, as the Court has stated, this was not the case.

- 7 -

### C. The State's Arguments

The State argues that the Court erred in determining that A.R.S. § 41-1491.35 was not a cause of action. (Doc. 713 at 2). As the State correctly notes, there are no Arizona state court decisions interpreting the pattern-or-practice statute. (Doc. 713 at 4). Because the Arizona legislature intended the AFHA to mirror the FHA, cases interpreting the latter are persuasive as to the interpretation of the former. *See Canady v. Prescott Canyon Estates Homeowners Ass'n*, 60 P.3d 231, 233 ¶ 9 n.3 (Ariz. Ct. App. 2002). The State cites a number of cases from other federal courts interpreting the FHA, specifically 42 U.S.C. § 3614, which concerns pattern-or-practice claims and upon which A.R.S. § 41-1491.35 is derived.

The State principally relies upon *United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992) for the proposition that a pattern-or-practice claim is a cause of action under the FHA. *See* (Doc. 713 at 4-5). In *Balistrieri*, the United States sued the owner and rental agent of an apartment complex for discriminatory rental practices. 981 F.2d at 924. The Seventh Circuit Court of Appeals ("Seventh Circuit") recited in its opinion that the jury found that the defendants "had violated the Fair Housing Act by intentionally engaging in a pattern or practice of discrimination." *Id.* at 926.

The key paragraph of the Seventh Circuit's analysis in *Balistrieri* reads as follows:

> The government, however, had to prove more than the fact that the defendants discriminated against several people. Section 3614(a) empowers the Attorney General to sue if he has cause to believe that a "pattern or practice" of violations exists. Proof of isolated or sporadic acts of discrimination does not suffice to prove a pattern or practice. Rather, the government must present evidence from which the fact-finder can reasonably conclude "'that . . . discrimination was the [defendants'] standard operating procedure—the regular rather than the unusual practice.'"

*Id.* at 929 (citations omitted).

The State urges that this language supports the existence of a pattern-or-practice cause of action. (Doc. 713 at 5). It is unclear, however, how the State's argument translates into the argument, as framed by the Court, that 42 U.S.C. § 3614 provides a

new substantive right to the government. In *Balistrieri*, the Seventh Circuit cited 42 U.S.C. § 3604 with respect to substantive prohibitions against discrimination, and cited section 3614 with respect to the United States' standing to bring the lawsuit as well as the scope of relief. 981 F.2d at 927. Thus, the Seventh Circuit's discussion of a pattern or practice in the above-quoted paragraph appears to imply two necessary factual findings for the United States to have prevailed in *Balistrieri*: (1) a finding of discrimination in rental practices under the substantive rights of 42 U.S.C. § 3604 and (2) a finding that the Attorney General's belief that a pattern or practice of discrimination existed was reasonably supported.

The first finding follows logically from the fact that the United States could not prevail without proving that discrimination occurred. The second follows from the Seventh Circuit's remark that the United States "had to prove *more than* the fact that the defendants discriminated against several people." 981 F.2d at 929 (emphasis added). Section 3614(a) grants standing upon the Attorney General having "reasonable cause to believe" that a pattern or practice of FHA violations exists. Proof of the existence of FHA violations serves two purposes: It tends to show that a violation of the substantive rights protected under the FHA has occurred, and it tends to show that at the time of filing suit the Attorney General had reasonable cause to believe that a pattern or practice of such violations existed. Because the latter is necessary to establish standing on the part of the United States, the jurisdictional issue of standing and the substantive claims are "so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits." *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). In such cases, "the intertwined jurisdictional facts must be resolved at trial by the trier of fact." *Id.* Thus, the jury's finding of a pattern or practice establishes that the Attorney General's belief in the existence of a pattern or practice was reasonable, and therefore that statutory standing existed.

This interpretation of the FHA pattern-or-practice framework comports with the well-established legal principle that the party invoking federal jurisdiction bears the

burden of establishing standing, and each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The requirement that the United States prove that it had a reasonable cause to believe that a pattern or practice of FHA violations existed also appropriately prevents the United States from unilaterally sidestepping the standing prerequisites by issuing an unreviewable declaration that it had a reasonable belief when it in fact had none.

Nothing in the remainder of the opinion in *Balistrieri* bears on the scope of a pattern-or-practice claim. Accordingly, *Balistrieri* appears to stand for the proposition that a FHA pattern-or-practice claim requires (1) statutory standing as specified in 42 U.S.C. § 3614(a), (2) a violation of legal rights protected by other FHA statutes, and (3) a demand for relief under § 3614(d). As the Court has stated, the United States must prove at trial the intertwined jurisdictional question of statutory standing. Because the statute provides standing, a cause of action, and available relief, it creates a pattern-or-practice claim.

Based on the similarities between the FHA and AFHA, the Court concludes that the persuasiveness of *Balistrieri* applies equally to A.R.S. § 41-1491.35. The AFHA thus creates a pattern-or-practice claim requiring (1) statutory standing as specified in § 41-1491.35(A), (2) a violation of legal rights protected elsewhere in the AFHA, and (3) a demand for relief under § 41-1491.35(B). The Court notes, however, that its conclusion does not materially differ from that expressed in its Order accompanying the Judgment, in which it remarked that § 41-1491.35 conferred standing and additional remedies upon other AFHA causes of action. *See* (Doc. 703 at 4 n.3). The difference is that the Court now recognizes that the trier of fact must find, at a minimum, that the government had reasonable cause to believe a pattern or practice of discrimination existed. In the present case, both the jury and the Court found that a pattern or practice of discrimination existed. *See* (Doc. 703 at 5).

Indeed, the Court's revised opinion as to the existence of an AFHA pattern-or-

practice claim stems from the recognition that its prior Order required a cause of action to enumerate a legal right or rights unique to only that cause of action. This confusion stemmed from an overly-narrow definition of "cause of action," a misinterpretation that places the Court in the distinguished company of jurists serving on the Fifth Circuit Court of Appeals. *See Davis*, 442 U.S. at 239 n.18 ("The Court of Appeals appeared to confuse the question of whether petitioner had standing with the question of whether she had asserted a proper cause of action."). The Court's error was one of terminology and not of substance.

Defendants argue, however, that the Court's prior Order appropriately relied upon *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013) to conclude that a pattern-or-practice claim is not an independent cause of action. Although *Parisi* was a Title VII discrimination case, the Court cited it because Title VII discrimination analysis has been held to apply to FFHA discrimination cases. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). In *Parisi*, the Second Circuit Court of Appeals reaffirmed that "in Title VII jurisprudence 'pattern-or-practice' simply refers to a method of proof and does not constitute a 'freestanding cause of action,'" *Parisi*, 710 F.3d at 487 (citing *Chin v. Port Authority of N.Y.*, 685 F.3d 135, 148 n.8 (2d Cir. 2012)). *Chin v. Port Authority of New York* itself relied upon other Title VII cases that compared pattern-or-practice cases to those involving disparate treatment. *See Chin*, 685 F.3d at 148-49 (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 343 (1977)).

In *International Brotherhood of Teamsters*, the Supreme Court held that the government could prevail in a Title VII pattern-or-practice case merely by making an unrebutted showing that "unlawful discrimination has been a regular procedure or policy followed by an employer." 431 U.S. at 360. But *International Brotherhood of Teamsters* also uses the phrase "pattern-or-practice action." *Id.* Accordingly, the Court is not convinced that this case stands for the proposition that a pattern-or-practice is merely a method of proof. Regardless, the Court now believes that *Balistrieri*, an actual FFHA

- 11 -

case, is more persuasive than Title VII cases in divining the nature of a pattern-or-practice claim. *Balistrieri* supports, and the Court's understanding of the definition of "cause of action" confirms, that a pattern-or-practice cause of action exists under the FHA.

For the foregoing reasons, the Court will amend its Judgment to add A.R.S. § 41-1491.35 as a basis upon which to enter judgment in favor of the State.

### D. Relief

The State also asks that the Court also grant equitable relief to three nonparties who testified in favor of the State's case. (Doc. 713 at 11). Specifically, the State requests the Court require Defendants to supply John Cook, Patrick Barlow, and Richard Holm (or his brother, Monte Holm) with municipal utilities on a non-discriminatory basis. (*Id.*) Each of these individuals testified concerning Defendants' pattern or practice of discriminating against individuals in the provision of utilities on the basis of religion. *See* (Tr. at 386-488) (Richard Holm); (Tr. at 489-630) (Barlow); (Tr. at 2274-2347) (Cook).

As a threshold matter, although the State attempts to tie its request for more specific injunctive relief to the Court's initial failure to enter judgment on the State's pattern-or-practice claim, *see* (Doc. 713 at 10), the two are wholly unrelated. As the Court explained, the available scope of relief under A.R.S. § 41-1491.35(B) was never at issue, and the Court exercised its discretion to award injunctive relief under that statute. At the time the Court issued the Judgment, it believed that its prohibition on discrimination in violation of the AFHA and FFHA was sufficient to encompass relief to the nonparties without needing to identify specific individuals. Thus, the Court considered the State's requested injunctive relief with respect to these individuals and was well aware of its power to grant it, but declined to do so.

The State now argues that Defendants are not providing water service to Cook, Barlow, and Holm on non-discriminatory terms. Although finding Defendants in contempt of the Court's injunction requires an evidentiary hearing, no such hearing is required for the Court to exercise its wide discretion in deciding the scope of equitable

relief in the first instance. Defendants respond that Holm has already received a water connection and therefore any request as to him is moot. (Doc. 718 at 8).

Defendants make a troubling series of factual assertions, however, concerning Cook and Barlow. Namely, Defendants contend that they have "begun the process" to change their behavior following the jury's verdicts. (*Id.* at 9). They contend that they are waiting on an engineering firm to analyze the water system and make recommendations concerning an impact fee to charge for new connections to the system. (*Id.*) Defendants state that once the engineering firm's analysis is finished, they will "hold a series of public meetings" to collect questions as well as to "consider, discuss, and adopt the engineering firm's recommendations." They assert that the "Utility Board must now wait for the engineering firm to complete its analysis so that it knows the amount of the impact fee." (*Id.*) They state that after the process of reviewing the analysis, holding public meetings, and creating a policy for the distribution of water, "John Cook and Patrick Barlow can apply for new water connections. Assuming they comply with the application process and pay all required fees, they can then receive those new water connections, just like any other applicant." (*Id.* at 9-10).

Although the matter is not before the Court on an evidentiary hearing and the Court at this time makes no factual or precedential findings as to whether Defendants' conduct violates the injunction, Defendants' assertions do not instill confidence that Defendants understand their obligations under the injunction. For example, Defendants apparently intend to keep John Cook and Patrick Barlow's water connections in limbo until they decide the amount of an impact fee—an event that has no stated timeframe. Moreover, presumably Defendants have not disconnected water service from every user of the system pending the determination of this "impact fee" despite claiming that this fee is of such importance that there can be no new connections in the meantime.[3] Evidence at

---

[3] To the contrary, the State asserts that the Town of Colorado City recently supplied new culinary water and sewer service to a group of FLDS families that have moved onto city land after being evicted from their properties. *See* (Doc. 721 at 11).

Furthermore, as the State points out, *Monte* Holm, who unlike Cook and Barlow

- 13 -

1  trial showed that favoring existing water users over new connections has a discriminatory
2  effect upon non-FLDS residents. Defendants cannot continue this practice.

3  Defendants must not condition an applicant's water service on vague conditions
4  inconsistent with the obligation of a municipal utility provider. An illustration drives this
5  point home: For example, the City of Phoenix, which supplies culinary water, could not
6  stop accepting applications for new service until the City Council at some unknown
7  future time decided on the amount of a new impact fee. Defendants may be able to assess
8  an impact fee for new water connections (although any fee is subject to review for
9  discriminatory effect), but they cannot use the process of determining the amount of the
10 fee as a tool to further discrimination.

11 The Court enjoys wide discretion in fashioning equitable relief. The original terms
12 of the Court's injunction on their face prevent the sort of discriminatory conduct that the
13 State now alleges is ongoing. But Defendants' response to the State's motion has
14 emphasized to the Court that including terms of greater specificity in the injunction will
15 increase its efficacy by obviating the need for the State to bring a motion for a finding of
16 contempt against Defendants. For these reasons, and because the evidence presented at
17 trial clearly supports providing specific injunctive relief in favor of Cook and Barlow, the
18 Court will amend the Judgment to grant the State's requested relief.

19 The Court warns Defendants that it will not hesitate, upon motion and the requisite
20 showing at an evidentiary hearing, to find Defendants and their officers in either civil or
21 **criminal** contempt[4] of its injunction. The Court further warns Defendants that their
22 description of having "begun the process" to make changes to their water policy is
23 inadequate. Defendants' use of the word "process" implies the existence of some time
24 period during which a reduced level of discrimination occurs while Defendants ultimately

---

did not testify against Defendants, has recently received new water and sewer connections from Defendants. (Doc. 721 at 10-11); *see also* (Doc. 718 at 2) ("The State of Arizona's request for additional injunctive relief is moot as to Richard Holm because Hildale City already agreed to provide new water and sewer connections . . . .")

[4] In general, penalties for criminal contempt include incarceration.

transition to the non-discriminatory provision of utilities. Such continuing discrimination will not be tolerated.

For these reasons, the Court believes that including additional specifics in the injunction is "necessary to assure the full enjoyment of the rights" granted by the AFHA. *See* A.R.S. § 41-1491.35(B)(1). The Court will contemporaneously with this Order issue an Amended Judgment and Permanent Injunction.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** granting the State of Arizona's Motion to Amend the Judgment (Doc. 713).

**IT IS FURTHER ORDERED** that within seven days from the date of this Order the officer(s) primarily responsible for approving new utility connections at Hildale-Colorado City Utilities, Twin City Water Authority, and Twin City Power shall each file a certification stating under oath that he or she has read a copy of this Order and the Amended Judgment and Permanent Injunction.

**IT IS FURTHER ORDERED** that within seven days from the date of this Order the officer(s) primarily responsible for creating and approving policies pertaining to utility service for the Town of Colorado City and the City of Hildale shall each file a certification stating under oath that he or she has read a copy of this Order and the Amended Judgment and Permanent Injunction.

Dated this 25th day of November, 2014.

James A. Teilborg
Senior United States District Judge