WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RONALD COOKE and JINJER COOKE, husband and wife,<br><br>Plaintiffs,<br><br>THE STATE OF ARIZONA ex rel. TERRY GODDARD, the Attorney General; and THE CIVIL RIGHTS DIVISION OF THE ARIZONA DEPARTMENT OF LAW,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>TOWN OF COLORADO CITY, ARIZONA, *et al*.,<br><br>Defendants. | No. CV-10-08105-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Movant United Effort Plan Trust ("UEP")'s Motion for Order to Show Cause, (Doc. 738), in which UEP argues that defendant Colorado City ("Colorado City") should be held in contempt "for continuing religious discrimination in violation" of prior Court orders, primarily the injunction issued on November 26, 2014. (Doc. 723). The Court now rules on the pending motion.[1]

---

[1] The Court's docket shows that UEP filed two "replies" in support of its motion. UEP's first reply was filed on January 13, 2016. (Doc. 742). The next day, UEP filed a second reply, (Doc. 743), that failed to identify itself as an amended reply. Nonetheless, it is evident to the Court that UEP sought to amend its reply in support of the pending motion and include an additional declaration. (Doc. 743 at 11- 14). The amended reply

## I. Background

In the interest of brevity, the Court restricts its recitation of the facts to those pertinent to the pending motion. *See* the Orders of February 13, 2013, and September 4, 2015, for a full recounting of the matter's background. (Doc. 318 at 2-10; Doc. 703).

Following a jury trial in which Plaintiffs Ron and Jinjer Cooke (collectively, the "Cookes") and Plaintiff-Intervenor the State of Arizona (the "State") prevailed over Defendants,[2] the Court entered the Amended Judgment and Permanent Injunction (hereafter the "injunction"). (Doc. 724 at 1). The injunction, in part, enjoined the following:

> During the ten-year period beginning from the date of this Judgment, Defendants and their agents shall not (1) discriminate because of religion against any person in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of a dwelling; or (2) coerce, intimidate, threaten, interfere with, or retaliate against any person in the enjoyment of his or her dwelling because of religion or because that person has asserted rights, or encouraged others to assert their rights, protected by the federal Fair Housing Act or the Arizona Fair Housing Act.

(Doc. 724 at 2). The injunction shall "remain in place for ten years from the date of th[e] Judgment," and the Court "retain[ed] jurisdiction to enforce it." (*Id.* at 2-3).

On December 14, 2015, UEP, "on behalf of itself and its beneficiaries who possess occupancy agreements to reside on UEP property," moved this Court to find Colorado City in contempt of the aforementioned injunction "for continuing religious discrimination." (Doc. 738 at 1). UEP seeks a "limited period of discovery," and an evidentiary hearing to establish that: (1) Colorado City passed a 2007 Land Division Ordinance (hereafter the "Subdivision Ordinance") with the "express intent" of discriminating against individuals who do not belong to the Fundamentalist Church of

---

was timely filed in accordance with LRCiv 7.2(d), and the Court will consider it as part of the record. (Doc. 743). The Court will disregard the initial reply. (Doc. 742).

[2] Colorado City is a named defendant in this matter. The pending motion addresses only Colorado City's actions. The Court need not delineate the other named defendants.

- 2 -

Jesus Christ of Latter Day Saints (FLDS); (2) the passage and application of the Subdivision Ordinance resulted in religious discrimination against UEP and its beneficiaries; and (3) Colorado City "has engaged in disparate treatment in applying the Subdivision Ordinance to residents of the city" on the basis of their affiliation with the FLDS. (*Id.* at 7-8).

With the motion fully briefed,[3] the Court turns to the merits of UEP's claim.

## II. Discussion

The parties' briefing raises two issues that must be addressed by the Court:[4] (1) whether UEP has standing to move this Court itself or on behalf of its beneficiaries to find Colorado City in contempt; (Doc. 740 at 9-10); and (2) whether litigation initiated by Colorado City in Maricopa County Superior Court precludes this Court from considering UEP's motion. (*Id*. at 10-11). Each will be addressed in turn.

**(A)  Standing**

---

[3] Colorado City filed an untimely response to UEP's motion that the Court elected to consider as part of the record. (Doc. 740).

[4] Colorado City's response and UEP's reply were somewhat unclear in presenting their respective arguments. For example, Colorado City seems to argue that UEP failed to identify the specific beneficiaries it filed the motion on behalf of, UEP failed to allege that Colorado City discriminated against the Trust itself, UEP requested "general" relief outside of the scope of the injunction, UEP lacks standing, the injunction only covers individuals seeking individual relief, and that the Maricopa County litigation will resolve the issues that form the basis of UEP's motion. (Doc. 740 at 9-10). UEP, in response, argues that (1) Colorado City discriminated against it "in connection with the sale or rental of a dwelling," (2) UEP has standing to assert claims on behalf of itself and certain beneficiaries, (3) UEP seeks particularized relief from this Court, and (4) that the Maricopa County litigation has no impact on this motion. (Doc. 743 at 4-6). The Court concludes that this assemblage of arguments from both parties may be consolidated into two issues: (1) whether UEP has standing to file the pending motion on behalf of itself and its beneficiaries; and (2) whether this Court should hold an evidentiary hearing in light of ongoing state court litigation.

The Court begins with the issue of whether UEP has individual standing to move the Court on its own behalf. The launching point for the Court's analysis is the September 4, 2014, Order that—in part—"permanently enjoine[d] Defendants [to include Colorado City] from discriminating on the basis of religion in performing their official duties" and retained "jurisdiction in this case for ten years." (Doc. 703 at 6-7). The Court's authority to issue the injunction emanated from A.R.S. § 41-1491.35 (2014), which permits the Court to "award preventive relief, including a permanent or temporary injunction, restraining order or other order against the person responsible for a violation of the Arizona Fair Housing Act [AFHA] as necessary to assure the full enjoyment of the rights granted by this article." (Doc. 703 at 6). Thus, while the Court's relief is designed to prevent Defendants from violating citizens' rights enshrined in the First Amendment, the injunction is grounded in the AFHA.[5]

The Court's September 4, 2014, Order stated that "the State or an aggrieved party will be able to move for an order finding Defendants in contempt and assessing appropriate remedies." (Doc. 703 at 7). "[A]ggrieved party," however, is an undefined term and not helpful to determine who may seek relief under the Court's injunction. The Court finds that a more appropriate term—which comports with both the Court's Order, (Doc. 703), and injunction, (Doc. 724)—is that an "aggrieved person" may move this Court for a contempt order. As discussed *supra*, the Court's authority to award injunctive relief is derived from the AFHA, and the injunction itself contains language taken directly from the statute. (Doc. 703 at 6; A.R.S. § 41-1491.35). It follows that that an "aggrieved person," defined by the AFHA, A.R.S. § 41-1491 (1), (9) (2014), is permitted

---

[5] This finding is supported by the text of the injunction itself, which mandates that Defendants refrain from discriminating on the basis of religion "in connection with the sale or rental of a dwelling." (Doc. 724 at 2). This exact language is found in the AFHA. A.R.S. § 41-1491.14 (2014). The injunction also precludes Defendants from "coerc[ing], intimidat[ing], threaten[ing], interfer[ing] with, or retaliat[ing] against any person" who "has asserted rights, or encouraged others to assert their rights, protected by the federal Fair Housing Act or the Arizona Fair Housing Act." (Doc. 724 at 2).

to seek relief.

The AFHA defines an "aggrieved person" as "any person who either . . . [c]laims to have been injured by a discriminatory housing practice," or who "[b]elieves that he will be injured by a discriminatory housing practice that is about to occur." A.R.S. § 41-1491 (1). The base term "person" is defined as "one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees, receivers, fiduciaries, banks, credit unions and financial institutions." A.R.S. § 41-1491 (9). The term, as its definition suggests, is to be read broadly. *See City of Tempe v. State*, 351 P.3d 367, 371 (Ariz. Ct. App. 2015) (citation omitted) (noting that the Arizona "legislature adopted the AFHA with the intent to undertake vigorous steps to provide equal opportunity in housing"). The injunction mentions the term "person" on several occasions, and does not refer more generally to "entities," such as UEP. (*See* Doc. 724 at 6-7). This is immaterial. The term person must be read in light of the AFHA, which, expressly includes "trusts." A.R.S. § 41-1491.14. Read together, a trust that has "been injured by a discriminatory housing practice" may file a civil action to "obtain appropriate relief." A.R.S. § 41-1491.31 (A).

"A permanent injunction must be carefully crafted," and "[t]he scope of the injunction should be coterminous with the infringement." *MGM Studios*, *Inc. v. Grokster*, *Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) (citation omitted); *see also Waldman Pub. Corp. v. Landoll*, *Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (noting that "[i]njunctive relief should be narrowly tailored to fit specific legal violations"). Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *United States v. AMC Entm't*, *Inc.*, 549 F.3d 760, 775 (9th Cir. 2008) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). But the terms that comprise the injunction must be read in light of the definitions set forth in the AFHA. The Court finds that nothing precludes UEP from moving the Court for relief on the basis of its status as a trust.

The inquiry with respect to UEP's standing continues, however. Colorado City argues that UEP failed to allege that Colorado City "discriminated against *it*" or that Colorado City "interfered with *its* enjoyment of a dwelling because of religion." (Doc. 740 at 9 (emphasis in original)). The Court interprets this language to be an allegation that UEP failed to establish sufficient injury-in-fact. Arizona courts have yet to expressly declare what constitutes an injury-in-fact under the AFHA. But the "Arizona legislature intended the AFHA to mirror the FHA," and "cases interpreting the latter are persuasive as to the interpretation of the former. *Cooke v. Town of Colorado City*, 10-CV-08105-PCT-JAT, 2014 U.S. Dist. LEXIS 165557, at *14 (D. Ariz. Nov. 25, 2014) (citation omitted). "The Supreme Court has long held that claims brought under the [federal Fair Housing Act] are to be judged under a very liberal standing requirement." *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998). "Unlike actions brought under other provisions of civil rights law, the plaintiff need not allege that he or she was a victim of discrimination." *Id.* (citation omitted). "Rather, the sole requirement for standing under the Act is the 'Article III minima of injury[-]in[-]fact.'" *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)). "To meet this requirement, a plaintiff need only allege 'that as a result of the defendant's discriminatory conduct he has suffered a distinct and palpable injury,'" and "any person harmed by discrimination, whether or not the target of the discrimination, can sue to recover for his or her own injury." *Id.* (citations omitted).

UEP alleges it has suffered injury "because of its inability to deal with the distribution and sale of individual lots to deserving beneficiaries because of the application of the Colorado City [S]ubdivision [O]rdinance to its properties." (Doc. 743 at 5). Thus, "in connection with the sale of dwellings," UEP has been unable to act and has suffered "economic damage because . . . compliance [with the Subdivision Ordinance] . . . will render impossible the ability of [UEP] to sell and distribute properties." (*Id.* at 6). UEP has augmented its argument with declarations from beneficiaries who reside on "lots" located on "larger parcel[s]" of land with other

individuals. (Doc. 743 at 18, 23, 28). These beneficiaries attest to being unable to own their current properties, and must pay property taxes for the entire "larger parcel." (*Id.* at 28). UEP's allegations of injury-in-fact are scant. But the Court finds that UEP as alleged—barely—that due to Colorado City's discrimination against UEP on the basis of religion, UEP cannot sell and allocate real property and residential housing causing it economic injury. UEP has therefore demonstrated that it suffered a "concrete and particularized injury giving [it] 'a personal stake in the outcome of the controversy.'" *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (citation omitted); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (acknowledging that an "economic injury-in-fact" is sufficient to satisfy Article III).

UEP is an "aggrieved person" that has suffered a "distinct and palpable injury" and may move this Court for a contempt finding.[6]

### (B)   The Effect of the Maricopa County Litigation

As discussed above, Colorado City urges this Court to decline to consider UEP's requested relief because the same issue is also being litigated in the Maricopa County case. (Doc. 740 at 10, 11). Colorado City cites no legal precedent for why this Court should not consider this motion. *See*, for example, "*Burford* abstention," *New Orleans Pub. Serv.*, *Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989); "*Younger* abstention," *Pennzoil Co. v. Texaco*, *Inc.*, 481 U.S. 1, 11 (1987); the "first to file rule," *Intuitive Surgical Inc. v. California Institute of Technology*, 2007 WL1150787, at *2 (N.D. Cal. April 18, 2007); or any other abstention doctrine. UEP responded, also citing no legal authority, and argued that due to this Court's familiarity with these issues, this Court should hear this motion notwithstanding the pending state court litigation. Regardless of which abstention doctrine is being invoked by Colorado City, factually the

---

[6] Having found that UEP has satisfied the requirement for individual standing under the AFHA, the Court need not determine whether UEP has standing to assert the legal rights of its beneficiaries.

- 7 -

Court must determine whether the same issues are being litigated.

On April 14, 2015, Colorado City moved this Court for declaratory relief with respect to whether it has "authority under Arizona law to regulate subdivision issues within its municipal borders." (Doc. 725 at 1, 2). On May 27, 2015, the Court denied the request, concluding that Colorado City's "requested declaratory relief falls outside the scope of th[e] injunction," as "[d]eclaratory relief is not a remedy for failure to obey the injunction, and the Court lacks jurisdiction in this case to consider [Colorado City's] requested relief." (Doc. 734 at 2). On June 30, 2015, Colorado City responded by filing suit in Maricopa County Superior Court, seeking declaratory relief "regarding whether it has the authority under Arizona law to regulate subdivision issues by ordinance, and, in the exercise of this authority, whether it can require the UEP Trust to comply with the Land Division Ordinance for all property, whether partially improved or not." (Doc. 740-1 at 21). Thus, according to Colorado City, the state court will "determine Colorado City's intent in adopting its subdivision ordinance," and "the circumstantial facts surrounding Colorado City's passage and application of the ordinance, and whether Colorado City has fairly applied the ordinance to all applicants." (Doc. 740 at 11 (internal quotation marks omitted)).

The Court acknowledges that this is a close call factually. UEP has alleged, generally, that via Colorado City's Subdivision Ordinance, Colorado City is discriminating against UEP and its beneficiaries on the basis of religion, in violation of the Court's injunction. (Doc. 738 738 at 5, 7-8). A reading of UEP's motion does not appear to challenge Colorado City's authority to promulgate the Subdivision Ordinance, or whether UEP would be required to adhere to such a municipal action. Rather, UEP has alleged that Colorado City is relying on a previously enacted ordinance to discriminate on the basis of religion "in connection with the sale or rental of a dwelling."

Nonetheless, the Court is not prepared to grant—on the record before it—UEP's motion because the Court is not convinced that none of the abstention doctrines would apply. Furthermore, with respect to the factual similarity of the two lawsuits, although

Colorado City seeks in state court "broad declaratory relief which goes . . . beyond the bounds of the issues here," (Doc. 743 at 8), the pending state matter may nonetheless address the issues raised by UEP in its motion. The Court is aware of its decision to retain jurisdiction over the case to "lessen the burden of remedying any future discrimination vis-à-vis filing a new lawsuit," and the need to scrutinize Colorado City's future behavior. But UEP asks the Court to grant "limited," yet fairly robust discovery. And UEP believes that with the aid of this discovery, it will be able to "present its entire case to the Court within three (3) calendar days," (Doc. 738 at 9), a substantial undertaking by the parties and this Court. Based on the record before it, the Court is not convinced that the on-going litigation in Maricopa County does not preempt the need for this Court to initiate its own inquiry of Colorado City's actions.

Accordingly, the Court will deny UEP's motion, without prejudice. UEP is permitted to re-urge that the Court hold an evidentiary hearing if UEP first establishes that this Court is the proper forum to consider this dispute.

### III.   Conclusion

For the aforementioned reasons,

**IT IS ORDERED** that UEP's motion for Order to Show Cause, (Doc. 738), is **DENIED**, without prejudice.

**Dated this 16th day of February, 2016.**

James A. Teilborg
Senior United States District Judge